SHELBY JOLLY v. THE STATE.

No. 5780.    Decided April 28, 1920.

1.—Burglary—Explosives—Insufficiency of the Evidence—Descriptive Allegation.

Where, upon trial of burglary by means of explosives, the allegations in the indictment described the means used in committing the offense, it became essential to prove that one of the explosives named was used in order to sustain the conviction, and where the evidence meeting this burden upon the State, was inconclusive, and the State's evidence fell short of

identifying the defendant as the author of the crime or a participant therein, the conviction could not be sustained.

### 2.—Same—Verdict—Insufficiency of the Evidence—Rules Stated.

The sanctity of the verdict of a jury is such that it must not lightly be annulled in any case, but the law does not contemplate that an accused shall suffer because of the verdict when the evidence, viewed in its strongest light from the standpoint of the State, fails to make his guilt reasonably certain. Following Mitchell v. State, 33 Texas Crim. Rep., 575.

Appeal from the District Court of Morris. Tried below before the Honorable J. A. Ward.

Appeal from a conviction of burglary by means of explosives. Penalty, twenty-five years imprisonment in the penitentiary.

*J. H. French, Jr.* and *Henderson & Bolin*, for appellant.—Cited: O'Quinn v. State, 115 S. W. Rep., 39; Reagan v. State, 93 id., 733.

*Alvin M. Owsley*, Assistant Attorney General, for the State.

MORROW, JUDGE.—The conviction is for burglary, and punishment fixed at twenty-five years confinement in the penitentiary.

The indictment is drawn under Article 1316, Penal Code, which enhances the punishment for burglary with explosives, the charge being that the entry was to murder M. E. Stegall, and that nitroglycerine, gunpowder, and dynamite were used. Stegall lived in a room in a hotel, and some explosive was placed on one of the sills with a fuse attached, and an explosion took place. It was the state's theory that the appellant and one Simpson and one Coffey were conspirators, and acted together in the commission of the offense. There was evidence that Simpson had had a difficulty with Stegall, and that Stegall had been a witness against Coffey in a criminal case, and that each of them had threatened the life of Stegall, one witness declaring that Coffey had tried to induce him to aid in pumping chloroform from an adjoining building into Stegall's room. The offense took place in the village of Omaha at a hotel. It is the State's theory that the parties carrying the explosives had stopped their buggy in a road about two hundred and fifty yards from the hotel, and that from the buggy the explosive had been carried across some vacant property to the hotel, and there placed; that a fuse had been used, long enough to enable the parties to return to the buggy and drive some six hundred yards past the house of one of the witnesses before the explosion took place. The State's evidence suggests the theory that the explosive used was dynamite, though the jury was instructed that if either dynamite, nitroglycerine, or gunpowder was used, that it would sustain the offense. The evidence going to show what character of explosive was used is very meager. The sill on which the explosive appeared to have been placed was blown in two, and the floor torn up for a space of some

87 Tex.—19

four or five feet, and the bed in which Stegall was sleeping—the explosive being placed at the end of the bed—was torn up, though he was not seriously injured. A piece of fuse about fifteen inches long was found near the house after the explosion, this fuse apparently having been used in committing the offense. There was evidence that the explosion sounded like a report of dynamite, that it made a big report; and it was shown that dynamite might be exploded with a fuse.

Some time before sundown on the evening before the explosion—which took place at about one o'clock at night—the appellant and Simpson were seen traveling in a buggy, to have gone to the home of Coffey situated in the village, but failed to find anyone at home. It was also shown that on the same evening Coffey was at Marshall, and stated that it was necessary for him to reach home before sundown to meet some parties; that he did reach home before sundown, and went to his store; and that at the store, besides Coffey and Simpson, appellant and several others were present when Coffey told the witness Farrier to put a certain package in the buggy which was standing nearby. The package was a box, wrapped up, weighing twelve or thirteen pounds. No evidence was given as to its contents. After Farrier put the box in the buggy, Coffey told him to say nothing about it, and Simpson said "That's right." These remarks were made near enough to appellant for him to have heard them, and also within the hearing of other parties who were in the store. Later, Simpson, Coffey, and appellant got in the buggy. A few minutes before the explosion, according to the state witness Ellis, appellant and Simpson were at the oil mill in a buggy, the oil mill being situated at a distance variously estimated by the state witnesses from four hundred yards to a half mile from the hotel. The witness described them as at the oil mill a very few moments before he heard the explosion. Some time during the night, Simpson, in company with another party in a buggy, went to the home of the witness Walker, who was asleep, and told him that he wanted a smoke and asked for a match; and Walker gave him two or three matches. He lit one at once, and walked towards the buggy, lighting a cigarette on the way. The witness was not aware of the identity of the other person in the buggy. The witness did not hear the explosion, and could not locate the time of the visit with reference to the time of the explosion. Tracks of a buggy and horse were found next day near his house, also found near the oil mill, and near Coffey's house; and tracks were found in the road two hundred and fifty yards across country from the hotel. The buggy apparently stopped at this point, having approached at a slow rate of speed, and left it traveling rapidly. A witness who lived about six hundred yards beyond the point testified that about two minutes before the explosion a horse and buggy, traveling rapidly, passed his house. In the road near where the buggy stopped there was a footprint. There was also a footprint at the house of

Walker, and at the hotel one footprint was found in some ashes in the yard. These three footprints were all of the same size, though without peculiarities.

The averment stating the means used in committing the offense was descriptive, and it was essential to prove that one of the explosives named was used. Warrington v. State, 1 Texas Crim. App., 168; Rose's Notes on Texas Reports, Vol. 4, p. 1042; Michey's Digest Texas Crim. Rep., Vol. 4, p. 359. The evidence meeting this burden upon the State is inconclusive. The noise made by the explosion was such as might have been made by dynamite, but it was not shown that it was distinctive from such as might have been made by other explosives. No dynamite or other explosive was traced to the possession of any of the parties. The package which Coffey caused to be put in his buggy was not, so far as the evidence discloses, of a character to indicate its contents, nor does the manner of its handling suggest that the package contained dynamite. It was placed in the buggy openly, in the presence of several persons not connected with the offense, in daylight, some six or seven house before the explosion occurred. No reason is suggested for not leaving it in the store belonging to Coffey until darkness would have covered its removal and the time approached for its use. Unnecessarily hauling the package around in a buggy without any disclosed precautions tends rather to negative than to establish that its contents was a dangerous and powerful explosive. There is evidence that at Coffey's store whisky was unlawfully sold, and the identity of the package as contraband whisky is at least quite as plausible as that it was dynamite. If there was dynamite in the package the evidence that appellant was aware of it, or was in any way connected with a conspiracy to use it, is wanting. There is a failure to prove that a word was uttered by him, or within his hearing, which would tend to establish guilty knowledge or connection with the crime. The party who put the package in the buggy may have been told in appellant's presence to say nothing about it, but this falls far short of establishing its contents, or connecting him with the conspiracy to murder Stegall, against whom the evidence fails to show that he entertained any ill-will.

The acts and declarations of Coffey and Simpson out of the presence of appellant were not available to prove his connection with the alleged conspiracy. Preston v. State, 4 Texas Crim. App., 197; Martin v. State, 25 Texas Crim. App., 576; Webb v. State, 47 Texas Crim. Rep., 307, and other cases listed in Branch's Annotated Texas Penal Code, p. 352. The threats made by Coffey and Simpson were of a character to identify them as conspirators against Stegall, but the evidence in this record that the offense was committed by them is by no means conclusive. The evidence of the State's witnesses puts Simpson at a point from four hundred yards to a half mile distant from the scene of the offense a very few moments before the explosion took place, and leaves in doubt the question as to whether he did

not go from the oil mill to Walker's home where he was seen, but whether before or after the explosion is not shown. The similarity of the track at Walker's house with that in the ashes at the hotel and in the road near where the buggy was stopped some two hundred and fifty yards from the hotel is not convincing that Simpson was present at the hotel when the explosion was placed or the fuse lit. No pecularity is disclosed in the tracks of the buggy, the horse, or the man, and the tracks found were not shown to have coincided in size or shape with the foot of Simpson, there being no measurement of his foot and no proof of its dimensions. There was evidence that he frequented the hotel and the track in the ashes might under the evidence have been made by him at a time entirely disconnected from the offense, and so as to the track at Walker's, if made by Simpson.

Whether appellant was present or not at the time the explosive was placed, or the fuse lit, is a matter of conjecture. The state's evidence indicates that he was at the oil mill at a time inconsistent with his presence at the hotel when the fuse was lit. If he was not present, the record is silent as to whether he was doing any act in pursuance of the plan to murder Stegall. To render him guilty as a principal under the theory of conspiracy, he must have been present, or doing some act in pursuance of the common design at the time the offense was committed. Assuming that the buggy which stopped in the road was the buggy in which the appellant had theretofore been seen, the only track near the buggy, and the only track near the hotel, the existence of which were proved, were tracks which the record does not suggest were made by the appellant, it being entirely silent as to the size of his foot, or the character of his footware.

The appellant introduced no evidence. The State's evidence, accepting it as true, which must be done, falls short of identifying appellant as the author of the crime. Suspicion is cast upon him by the fact that he was in company with men with motive to commit the crime, and who had threatened to kill Stegall. But suspicion cannot supply the place of evidence consistent with guilt and inconsistent with innocence, excluding every reasonable hypothesis arising from the evidence except the guilt. There is no single circumstance pointing to appellant's guilt with such certainty that the same circumstance may not be, from the evidence upon the trial, explained in a manner consistent with his innocence. The cumulative facts do not form a connected chain drawing the mind to the appellant as an actor in the crime to a moral certainty, but consist rather of a series of disconnected facts, each one of which may be fitted into the theory of innocence.

On the whole, the facts are not such as would warrant us in giving sanction to the verdict which condemns the appellant. That the offense is one demanding heavy punishment is not to be doubted. His punishment in the absence of proof which, tested by the legal measure, establishes his guilt beyond a reasonable doubt, is not to be

sanctioned.   The sanctity of the verdict of the jury is such that it must not lightly be annulled in any case, but the law does not contemplate that one shall suffer because of the verdict when the evidence, viewed in its strongest light from the standpoint of the state, fails to make his guilt reasonably certain.   In such case, both by statute and precedent, it is encumbent upon this court in the performance of its duty to order another trial.  C. C. P., Art. 939; Mitchell v. State, 33 Texas Crim. Rep., 575.

Because the evidence does not established the guilt of appellant with reasonable certainty, the judgment is reversed and the cause remanded.

*Reversed and remanded.*