**Raul VILLARREAL, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 37087.**

Court of Criminal Appeals of Texas.

Nov. 4, 1964.

Rehearing Denied Dec. 9, 1964.

Second Motion for Rehearing Denied Jan. 13, 1965.

Wade & Howard, by Faires P. Wade, Corpus Christi (on appeal only), for appellant.

R. L. Lattimore, Dist. Atty., Oscar B. McInnis, Asst. Dist. Atty., Edinburg, and Leon B. Douglas, State's Atty., Austin, for the State.

MORRISON, Judge.

The offense is embezzlement; the punishment, two years.

Mrs. Garces testified that she made an agreement with appellant to remodel her house, paid him a down payment of $1,455.-00, that her house was remodeled and

that she was making payments on the balance to someone in Brownsville. At the time the agreement was made appellant left with her a receipt which he signed personally and a Repair and Remodeling Agreement which bore his signature over the printed words "Approved, Contractor". She said appellant was the only person she did business with and that she had no contact with anyone from a lumber company until shortly before the trial.

Larry Crockett, manager of South Texas Lumber and Supply Company of Donna, testified that he had been doing business with appellant for almost two years prior to the date charged in this indictment and that his oral agreement with appellant was that appellant was to locate homeowners who needed repairs and get them to execute contracts. As a matter of practice, these contracts were executed in triplicate. The first copy, which was left with the homeowner, was to bear appellant's signature as the contractor; the other two copies were to be brought to his office and if he felt that the work could be done for the price set forth in the contract, he would then fill in the name of the Lumber Company instead of appellant's name as contractor and obtain a credit report on the homeowner and send them to the lending institution for approval. If approved he would then prepare a Mechanics and Materialman's lien contract and note payable to the Company, and the Lumber Company was not bound to perform on the contract until all these steps had been taken. He stated that if he did not feel that the work could be done for the price set forth or if the loan company would not approve the loan, he would refuse to accept the contract or to be bound thereby.

He stated that on the Garces contract appellant led him to believe for a time that an $800.00 down payment had been made but that his company never received such sum. He stated further that he could not remember ever receiving a cash down payment from appellant during all their dealings together. The Company did perform the contract by permitting appellant to draw money for the purpose of paying his labor, by furnishing him material from the Lumber Yard and by paying the sub-contractors whom appellant selected.

On cross examination Crockett admitted that from none of the checks issued to appellant during the two year period did he deduct any sums for withholding or social security benefits. He admitted that appellant was doing business during this period under the assumed name of Guaranteed Building and Remodeling Company, had a telephone listing, maintained an office, had a checking account in such name and that appellant had given him checks drawn on such account. He stated that he had instructed appellant not to tell the people with whom he was doing business that he was working for the Lumber Company.

It was further shown that in appellant's dealings with other homeowners appellant had led them to believe that he was the contractor to whom they should look if dissatisfied.

Appellant testified that he had always been and was on the Garces transaction an independent contractor and was under no obligation to pay the Lumber Company any of the down payment. His testimony and that of Crockett as to Crockett's motive for initiating this prosecution and their complicated financial problems need not be set forth. Suffice it to say that at the time appellant received the Garces money the Lumber Company had no legal right to claim it because the Company was not bound on the contract.

In Fellers v. State, 138 Tex.Cr.R. 307, 136 S.W.2d 217, Judge Graves set forth the four well known propositions necessary to sustain a conviction for embezzlement and concluded with this rule: "It is also fundamental that in cases of embezzlement or theft title must be *at the time* the offense is committed in the injured person."

Title to the Garces down payment was not in the Lumber Company on the day appellant received and appropriated it because the Lumber Company had entered into no contract with Garces. It was appellant who was bound to perform on the contract and therefore he was entitled to the money which constitutes the basis of this prosecution.

Finding the evidence insufficient to support a conviction for embezzlement from the Lumber Company, the judgment is reversed and the cause remanded.

## ON STATE'S MOTION FOR REHEARING

WOODLEY, Presiding Judge (dissenting).

Rehearing denied.

The only contract signed by the Garces for repairs and improvements on their home was a contract with South Texas Lumber and Supply Company, a corporation, reciting a cash payment of $800 and agreement to pay a balance of $1440.00 in monthly installments.

The undisputed evidence shows that appellant figured the job and obtained the contract under his oral agreement with South Texas Lumber and Supply Company, by which he was to supervise the job and, after completion, was to receive any profit above the cost of material, labor and expenses which were to be furnished and advanced by the Lumber and Supply Company.

The state's evidence shows that the materials and money advanced by the Lumber and Supply Company amounted to more than the contract price, hence the Lumber and Supply Company suffered a loss and there was nothing due the appellant either before or after the completion of the improvements contract.

The undisputed evidence *further shows* that appellant received from Mrs. Garces $1455.00 to be applied on the improvement of her home and that he failed to account for such sum or for the $800.00 cash payment shown in the contract.

The court's charge, to which there were no objections, defined an agent as "one who undertakes to transact some business, or to manage some affair for another by his authority, and on account of the latter."

If appellant embezzled $50 or more of the money he received from Mrs. Garces to be applied on the improvements to her home, it is not material whether he embezzled it before or after the contract between the Garces and the Lumber and Supply Company was executed.

In determining whether or not there is sufficient evidence to sustain the jury's finding that the appellant received money of the value of $50 or over from Mrs. Garces as an agent of South Texas Lumber and Supply Company and embezzled it, the duty of this Court is to view the evidence in its strongest light from the standpoint of the state. Wright v. State, Tex.Cr.App., 364 S.W.2d 384, cert. denied, 375 U.S. 870, 84 S.Ct. 96, 11 L.Ed.2d 96; Mason v. State, 108 Tex.Cr.R. 452, 1 S.W.2d 283; Franklin v. State, 147 Tex.Cr.R. 636, 183 S.W.2d 573.

In Mason v. State, Judge Hawkins wrote on rehearing:

"Appellant insists that this court should not permit the judgment to stand under the evidence. We have again reviewed the facts. If we should agree with appellant's contention, it would be based, not upon the proposition that the evidence is insufficient, but upon the ground that we would assume to say that we do not believe the evidence given by the prosecutrix to be true, for, if believed, a case is made out. Very wisely the jury has been made the exclusive judges of the facts proven and the weight to be given to the testimony. Article 706, C.C.P. It is true this court has authority to reverse a

judgment on the facts as well as the law (article 848, C.C.P.), but this court does not, and should not, assume to exercise the right to reverse on the facts, unless the evidence, when viewed in its strongest light from the standpoint of the state, fails to make guilt reasonably certain. Jolly v. State, 87 Tex.Cr.R. 288, 221 S.W. 279; Taylor v. State, 87 Tex.Cr.R. 330, 221 S.W. 611. The jury having accepted the evidence of prosecutrix as true we find no warrant under the circumstances presented to interfere with its verdict."

In Franklin v. State, supra, this Court said:

"In construing these statutes (Art. 706 and 848 C.C.P.) and the respective powers conferred thereby, it has been the consistent holding that this court will reverse a case on the insufficiency of the evidence only when the testimony, viewed in its strongest light from the standpoint of the State, fails to make guilt of the accused reasonably certain. Mason v. State, 108 Tex.Cr.R. 452, 1 S.W.2d 283; 18 Tex.Jur., page 420, Sec. 299.

"It is true, as contended by appellant, that from time to time cases have been reversed by this court wherein the opinion was expressed that we were unwilling to let the judgment of conviction stand under the facts, such as Lozano v. State, 138 Tex.Cr.R. 549, 137 S.W.2d 1031; and Villareal v. State, 140 Tex.Cr.R. 675, 146 S.W.2d 406. Yet, in such cases, the conclusion so reached was based upon the weakness of the State's testimony as showing guilt of the accused.

"In no case has this court reversed a judgment of conviction upon the facts where the testimony of the State showed the guilt of the accused, because to do so would be to substitute our judgment for that of the jury, which the law expressly prohibits. This court

is not and cannot become, under our system of government, the trier of the facts. This power rests exclusively with the jury and usurpation by this or any other court would destroy trial by jury.

"Why the jury rejected the defensive testimony in this case is not for us to inquire into. In the exercise of the powers conferred by law, the jury had the right to do so and their action thereon is not subject to review by this court."

On Motion for Rehearing, the court said:

"The jury were the exclusive judges of the credibility of the witnesses and the weight to be given to the testimony, and although we may not agree with their conclusion, there is testimony herein sufficient to uphold their verdict."

Mr. Larry Crockett, manager of the South Texas Lumber and Supply Company at Donna and a director of the corporation, was called by the state and testified:

"Q. * * * I notice it shows on there the Garces job is to cost Nineteen Hundred and Fifty-five Dollars; is that correct?

"A. That is right.

"Q. Is that what this defendant represented to the company?

"A. Yes, that is right.

"Q. And, how much did he tell you, if anything, that he would receive down on the job?

"A. We were suppose— · to receive Eight Hundred Dollars, but he told us at a later date that he did not receive anything.

* * * * * *

"MR. McINNIS: I want to know whether or not this man's duties entailed receiving down payments on jobs where down

payments were made and turned in, and those down payments were turned over to the company.

"A. Yes.

\*    \*    \*    \*    \*    \*

"Q. And, to whom did the down payment belong?

"A. Belonged to South Texas Lumber and Supply Company."

On cross-examination:

"Q. You have testified, Mr. Crocket—, that this man was an agent of your company; isn't that correct?

"A. That is right.

\*    \*    \*    \*    \*    \*

"Q. Now, you started to testify a while ago about Mr. Villarreal's duties, and so on, with South Texas, was there any duty on his part to bring in these contracts to South Texas?

"A. Yes, that was his agreement."

\*    \*    \*    \*    \*    \*

The appellant testified:

"Q. While we are at it, let's see how you operated there for just a little bit. He (Larry Crockett) testified here, and you heard him, that the agreement was that you would go out and solicit these jobs and get them signed up for credit applications, check the credit rating, and also sign a contract, and you figured the job yourself?

"A. Right.

"Q. And, you brought it in there and if the credit was approved, if the credit was okay, they would get a mechanic's lien signed up in favor of the company?

"A. Right.

"Q. And, then, you would commence working on it then and they fur-

nished the materials, paid the labor and they kept a ledger sheet on each job separately?

"A. They didn't pay the labor. Furnished me money for the labor.

"Q. They furnished the money for the labor and you paid it?

"A. Right.

"Q. You would tell them 'I need so much money to pay my labor on that job?'

"A. We gave a lump sum, and gave that much and that was it. Wouldn't give any more.

"Q. And, you paid the labor and when the job was completed and closed out, whatever was left over and above the expenses, was your money?

"A. Right.

"Q. That is the way you were operating and that is the way you operated on the Garces job?

"A. Right.

\*    \*    \*    \*    \*    \*

"Q. \* \* \* you wouldn't have known on the Garces job how much money you had coming until it was all completed?

"A. I knew, more or less.

"Q. More or less, but you weren't entitled to receive it until the job was completed, closed out, and get down to exactly how much it was?

"A. Right.

"Q. And, then, he paid you? That is when you were suppose— to get your money?

"A. Right, he would give us a Hundred Dollar advance for expenses at the start of the job.

"Q. But, the final thing was when it was all over?

"A. Right.

"Q. You went out there and made a contract with Mrs. Garces?

"A. Yes, sir.

"Q. And, you filled in on her copy of it how much the job was supposed to cost?

"A. Right.

"Q. And, the copy that you brought in and turned it in to the company, the company filled in the bottom from the credit application that you turned in?

"A. Right."

The undisputed evidence being that the appellant was not entitled to receive any money other than for labor and a $100 advance for expenses until the job was completed, the money received from Mrs. Garces, at least to the extent of $800, from the time the contract was executed, belonged to the Lumber and Supply Company; was received by appellant as its agent, and was embezzled.

I respectfully dissent to the overruling of the State's motion for rehearing.