IN THE COURT OF
CRIMINAL APPEALS

                                   OF
TEXAS

 

                                                                              

                                                               NO.
PD-0469-05



 

 

                                                   DELAIR WATSON, Appellant

 

                                                                             v.

 

                                                        THE
STATE OF TEXAS

 



                         ON
STATE=S
PETITION FOR DISCRETIONARY REVIEW

                                      FROM
THE TENTH COURT OF APPEALS

                                                        MCLENNAN  COUNTY



 

Cochran, J.,
filed a dissenting opinion, in which Keller,
P.J., and Keasler and Hervey, JJ., joined.

 

 

                                                     DISSENTING
O P I N I O N 

 








I respectfully dissent.  For the
reasons set out below, I believe that further efforts to clarify, refine, or
revise the Clewis standard are as unlikely to succeed as our previous
attempts.  The Clewis factual-sufficiency review was a well-intentioned
but ultimately unworkable effort to incorporate civil standards of review on
elements of a crime that must be proven beyond a reasonable doubt.  I would
overrule Clewis and return to the single standard of review for
sufficiency of the evidence in a criminal case as set out by the United States
Supreme Court in Jackson v. Virginia.[1] 
Therefore, I would reverse the court of appeals and uphold the trial court=s judgment because the evidence
supporting appellant=s conviction was legally sufficient under the Jackson
standard.

                                                                 I.

Appellant was charged with burglary
by entering Jennifer Romo=s home without consent and attempting to commit or committing
sexual assault.  The evidence at trial showed that, on a warm June afternoon,
Jennifer Romo was at her kitchen screen door, watching her two pre-school
children play in the yard outside her Waco apartment, when she noticed
appellant jogging across the parking lot toward her.  Jennifer turned around
and went back into her kitchen.  When she turned around again, appellant was
standing at her screen door.  He stuck his head and body halfway through the
door and put his foot in the doorway.  Appellant tried to have a conversation
with Jennifer and kept saying that he knew her.  Appellant was wearing gym
shorts, and Jennifer could see that he had an erection.  Finally she told him
to leave, and he did.  








Jennifer went into her living room,
but a few seconds later she heard the screen door open again.  She turned
around and saw appellant standing inside her kitchen.  She was Aextremely@ angry and a little bit scared.  She
started forward, screaming at him to get out of her house, but he didn=t move.  AHe just stood there, and he looked at
me, and he just dropped his shorts, and they just fell.@  His penis was sticking out. 
Jennifer turned around and grabbed a butcher knife.  She testified, AI pointed it at him, and I told him
that he better leave my house, that he better get out. . . . He just looked at
me, and he grabbed the end of my knife.@  Jennifer twisted the knife to get
it out of his hands.  Finally, he let go of it.  Jennifer said, AI guess he thought I meant business
because he picked his shorts up and he walked out of the house.@  Jennifer thought that the reason
appellant left was because he thought she was going to stab him.  

Jennifer watched as he walked back
across the parking lot and sat down on a porch.  Jennifer called her father,
who told her to call the police.  When Officer Arnold arrived a few minutes
later, appellant was still sitting on the porch.  After talking with Jennifer
and taking her statement, Officer Arnold arrested appellant, who gave him a
false name.  Officer Arnold formed the opinion that appellant was trying to
cover up his culpability.  

The defense presented no evidence,
but appellant made a motion for instructed verdict.  He argued that the State
failed to offer sufficient evidence to prove appellant Aattempted to commit or actually
committed a sexual assault[.]@  The State conceded that there was no evidence that
appellant actually committed sexual assault, but argued that








there are plenty of things that he did that go to his
attempt to commit a sexual assault.  He pulled down his pants.  He exposed his
erect penis, and, critically, he grabbed for a knife when she had grabbed a
knife to protect herself.  He didn=t
turn and run away.  He put his hand out, and he grabbed that knife, and that
tells me that his intent was something more than just to expose himself to her.
. . . There was a reason why he came into her house.  He pulled his pants
down.  He was ready to do something to her.  You heard her testify that she had
one secondBin one second, she had that knife in her hand.  Just
because he never got the opportunity to grab her or pull her clothes off,
attempt to sexually assault her any further, doesn=t mean that the pulling the pants down and the
grabbing of the knife were not an attempt to sexually assault her.  And that is
some evidence.  It=s enough evidence that the jury could find beyond a
reasonable doubt that he did attempt that offense.

 

The trial judge denied the motion for
instructed verdict, and the jury convicted appellant of burglary and sentenced him
to thirteen years= imprisonment. 

On appeal, appellant argued that the
evidence was both legally and factually insufficient.  In a published opinion,
a majority of the court of appeals held that, although the evidence was legally
sufficient, it was factually insufficient because Athe evidence which tends to support
the verdict >preponderates= in favor of conviction but still [is] insufficient to prove
the elements of the crime beyond a reasonable doubt.@[2]  Chief Justice Gray dissented,
setting out the inculpatory evidence and concluding, AI guess my response to the majority
opinionB>You have got to be kidding=Bmakes me irrational, along with 12
jurors and the trial court.@[3]           

                                                                II.








Should a Texas jury=s Aguilty@ verdict be subjected to two distinct
Asufficiency of the evidence@ hurdles on appellate review?  The
first hurdle, Jackson, is the constitutionally required review for legal
sufficiency of the evidence.[4]  The second
hurdle was created by this Court in Clewis and draws from Texas civil
standards of review.  Since Clewis was decided ten years ago, we have
made frequent, but largely futile, attempts to clarify the differences  between
these two theoretically distinct sufficiency hurdles in criminal cases.  It is
crucial to distinguish clearly the constitutionally mandated hurdle of legal
sufficiency from the judicially created hurdle of factual sufficiency.  The
result of finding one rather than the other insufficient is dramatically
different.  If the evidence is legally insufficient, the defendant is entitled
to an acquittal by the appellate court, and he cannot be retried.  If the
evidence is factually insufficient, he is entitled only to a second trial in
which the State may produce additional evidence to satisfy whatever gaps or
conflicts a court of appeals found in the first trial.[5] 
It is essential that evidentiary hurdles like Jackson and Clewis
be easily distinguishable.  If they are not easily and logically
distinguishable, allowing both to apply muddles the law and violates the cardinal
principle of appellate justiceBthe Auniform and coherent enunciation and application of the law.@[6] 








In Jackson v. Virginia, the
Supreme Court of the United States held that constitutional due process
requires reviewing courts to Adetermine whether the record evidence could reasonably
support a finding of guilt beyond a reasonable doubt.@[7]  In assessing the sufficiency of
evidence, Athe relevant question is whether, after viewing the evidence in the light
most favorable to the prosecution, any rational trier of fact could have
found the essential elements of the crime beyond a reasonable doubt.@[8]  The Supreme Court explained:

This familiar standard gives full play to the
responsibility of the trier of fact fairly to resolve conflicts in the
testimony, to weigh the evidence, and to draw reasonable inferences from basic
facts to ultimate facts.  Once a defendant has been found guilty of the crime
charged, the factfinder=s role as weigher of the evidence is preserved through
a legal conclusion that upon judicial review all of the evidence is to
be considered in the light most favorable to the prosecution.[9]

 

Under Jackson, appellate
courts review a claim attacking the sufficiency of evidence in a criminal case
to determine whether the State produced enough evidence to support a Arational@ factfinder=s guilty verdict beyond a reasonable
doubt.  A Arational@ verdict is one that is Abased on reason@; it is Anot foolish or silly@; it is Asensible.@[10]  It is a verdict Abased on, or guided by reason,
principle, fairness, [and] logic[.]@[11]  To ensure that the original
factfinder=s weight and credibility decisions are given sufficient deference, the
Supreme Court requires reviewing courts to view all of the evidence in the
light most favorable to the prosecution.[12]  









In Clewis, this Court
authorized Texas courts of appeals to conduct a second review of the evidence: 
a factual-sufficiency review under the following test:

In conducting a factual sufficiency review, the court
of appeals Aviews all the evidence without the prism of >in the light most favorable to the prosecution= . . . [and] sets aside the verdict only if it is so
contrary to the overwhelming weight of the evidence as to be clearly wrong and
unjust.@[13]

 

On its face, this test differs from
the Jackson standard in two ways:  (1) the evidence is not viewed in the
light most favorable to the State (which is simply a proxy for deference to the
factfinder, either judge or jury); and (2) the verdict, even if rational and
reasonable under Jackson, is examined to see if it is so contrary to the
overwhelming weight of the evidence, that it is manifestly wrong and unjust. 
The issues that have bedeviled this Court and the courts of appeals for the
past ten years include:  (1) what, precisely, do those two prongs mean; (2) how
does the Clewis standard differ from the Jackson standard; and
(3) to what extent is the court of appeals statutorily or constitutionally
empowered to act as a thirteenth (and in absentia) juror?  More broadly, do
these standards differ sufficiently to require such a dramatic difference in
resultBacquittal versus retrial?  And
finally, as a matter of public policy, what is the injustice or legal problem
that a factual-sufficiency review is intended to solve?  Does it do so
satisfactorily?  I do not think so.








To adequately address these issues,
however, one must examine the historical development of both Texas and federal
appellate review standards for the sufficiency of evidence in criminal cases.

A.        Origins
of Texas Appellate Review of the Sufficiency of the Evidence.








Even in the days of the Texas
Republic, the Texas Supreme Court could review the sufficiency of evidence to
support a criminal conviction.  The earliest known case is Republic of Texas
v. Smith,[14] an 1841
decision, in which the Supreme Court of Texas addressed the threshold question
of whether a criminal defendant had a right to appeal Athe facts@ as well as Athe law.@[15]  Finding that it had jurisdiction Ato have the facts as well as the law,
at [the defendant=s] election, opened for re-examination,@[16] the supreme court reviewed the
defendant=s claim that, although he was charged with dealing faro[17]
in Austin, venue was improper in Travis County because, at the time of the
offense, Austin was in the territorial jurisdiction of Bastrop County.[18] 
The supreme court said that it would Aconsider the decision of the district
judge, with an eye both to the law and the facts as shown by the record.@[19]  It rejected the defendant=s venue claim.[20]








The next important decision dealing
with Athe facts@ in a criminal case, was Bishop v.
State,[21] decided in
1875.  A jury convicted Bishop of stealing a cow from Mrs. Lizzie Hill.  There
was conflicting evidence on whether he Aappropriated@ the cow in good faith by purchasing
it from a man named Keel, or he fraudulently took it from Mrs. Hill.[22] 
The jury charge, however, omitted the statutory word Aappropriation@[23] and its definition.  Given the
conflicting evidence on the sole disputed fact issue, this was a material
error.[24]  The trial
judge committed a second material error when he told the jury that, in civil
cases, Athe jury must believe all evidence
given before them until the same is impeached, and in a criminal case they may
discard from their consideration any part of the whole of the testimony that
they may regard as improbable.@[25]  The supreme court condemned that
statement as infringing upon the jury=s right to make its own credibility
decisions, and it noted that Amany improbable things actually do occur, and when detailed
in evidence as part of any matter under investigation they are not to be
discarded from the consideration of the jury because they are improbable.@[26]  It is the jury, not the trial judge
(and not the appellate court), that makes credibility decisions. [27]









These two cases have been cited as
supporting the view that Texas appellate courts are authorized to conduct a
review of the factual sufficiency of evidence in criminal cases.[28] 
They provide no such support.  Instead, Smith explained that the Texas
Supreme Court had jurisdiction over an Aappeal@ from a criminal case, including both
the facts and the law, not merely over a Awrit of error@ which, under the early English
common law, was a formal point of law that accepted the Afacts@ uncritically.[29] 
And Bishop emphasized the importance of the jury=s factfinding role once it has been
properly instructed on the applicable law.  These cases hold that appellate
courts may re-examine the factsBthe evidence in the trial recordBin addressing the legal issues.  

In 1875, the supreme court did review
the sufficiency of evidence in Tollett v. State,[30]
and, in 1877, the newly created court of appeals did so in Loza v. State.[31] 
In both cases, the reviewing court held that there was not Alegal and competent evidence@ establishing an element of the
offense:  in Tollett, the prosecution failed to prove that the
defendant  participated in a theft from a storehouse;[32]
in Loza, the prosecution failed to prove that the defendant had the
intent to permanently deprive the owner of his gelding.[33] 
The courts used a single sufficiency-of-the-evidence standard:








            whether or not there has been adduced
before the jury a sufficient amount of legal and competent evidence as would
render it safe to allow the verdict to stand and become a precedent in the
adjudication of offenses under the law. The performance of this duty on the
part of the court is the exercise of a legal discretion and judgment as to what
facts should be sufficient to rebut the legal presumption of innocence to which
every one is entitled who is put upon his trial for an offense.[34]

 

This sounds very much like the Jackson
standard appellate courts now use for assessing legal sufficiency of the
evidence.  And it was the only standard used.  There were not two distinct Asufficiency of the evidence@ hurdles in the early Texas years. 
But, like Smith and Bishop, both Tollett and Loza
have been cited as supporting the view that early Texas courts were authorized
to consider Afactual@ as well as Alegal@ sufficiency of the evidence in a criminal case.[35] 
In fact, Smith, Bishop, Tollet, and Loza were all properly
decided under a Jackson-like standard alone; a separate
factual-sufficiency analysis was neither made nor necessary to their
resolution.

The most important case discussing
sufficiency of the evidence was the court of appeals=s 1883 decision in Walker v.
State,[36] in which the
court set out four categories or zones to use in analyzing the question, ADoes the evidence support the verdict
of the jury?@








First.  Where the evidence is conflicting, and there
is sufficient [evidence], if believed, to prove the case of the State, the jury
being the exclusive judges of the credibility of the testimony, their verdict
will not be set aside unless it clearly appears to be wrong.Second.  Where
there is no testimony to support it, the verdict will be set aside.Third. 
Where the evidence is insufficient to rebut the presumption of innocence, the
verdict will be set aside.Fourth.  Where the verdict is contrary to the weight
of the evidence, it will be set aside.[37]

 








Walker was apparently the first Texas case
to specifically set out the Azone@ theory of
sufficiency analysis, one that has historically been used to determine whether
a party has shouldered his burden of proof by a preponderance of the evidence.[38] 
In zone one, under Walker, the appellate court upholds a criminal
conviction when there is sufficient evidence to prove the State=s case (even
though the evidence may be conflicting), unless Ait clearly appears to be wrong.@[39]  Walker=s zone two is a Ano evidence@ standard, and that means no
evidence or a mere modicum or scintilla.  Zone three is Ainsufficient evidence,@ more than a mere scintilla but not
enough to Arebut the presumption of innocence,@ i.e., not enough to meet Jackson=s Abeyond a reasonable doubt@ standard.  Zone four is a verdict
contrary to the Aweight@ of the evidence; this zone translates to the modern Texas
civil standard of Aagainst the great weight and preponderance@ of the evidence.[40] 
Missing is zone 5B the modern civil standard of Aconclusive evidence@Bbecause the State is never entitled
to a directed verdict of guilty.  The Walker court explained that its
duty was to determine which zone the evidence fell into.  








In Walker, the court held that
the evidence was Ainsufficient@ (zone 3) to prove that the murder victim had actually died
because the State failed to show that the body retrieved 600-900 miles down the
Brazos River was actually that of the missing manBW.B. Mathis.[41] 
Thus, the court reversed the defendant=s murder conviction and remanded the
case for another trial, giving the State hefty hints on how to produce
sufficient evidence in the retrial.[42]  Walker has
been cited as supporting both a legal and factual sufficiency of the evidence
review,[43] even though
the court=s decision was fully consistent with the Jackson standard alone.[44]













In sum, case law before the creation
of the Texas Court of Criminal Appeals held that the evidence in a criminal
case was required to be Asufficient@ to support a conviction and that evidence was measured
against one single standard, but there were various ways of expressing that
standard.  When the evidence was insufficient, the case was remanded for a
second trial.

B.        Texas
Appellate Review of Sufficiency of the Evidence from 1891-1976.

The 1876 Texas Constitution stripped
the Texas Supreme Court of jurisdiction over criminal cases and created the
Texas Court of Appeals that had jurisdiction over all criminal, county court,
and probate appeals.[45]  A majority
of the delegates to the Constitutional Convention of 1875 were progressives and
largely anti-government; they were not particularly interested in the judiciary
or the structure of state courts, but they had great faith in juriesBtheir fellow citizens.[46] 
Indeed, every Texas constitution had enshrined the right to a trial by jury in
both civil and criminal cases, and, under the 1876 Constitution, that right to
a jury trial Ashall remain inviolate.@[47]













In 1891, the Texas Constitution was
amended in two important respects.  First, because the overburdened supreme
court was so far behind on its docket, the legislature created three courts of
civil appeals which had intermediate appellate jurisdiction.[48] 
AThe theory in creating the courts of
civil appeals apparently was that their decisions would be final in most civil
cases.@[49]  To help ensure that goal, the
constitutional provision creating the courts of civil appeals also stated that Athe decision of said courts shall be
conclusive on all questions of fact brought before them on appeal or error.@[50]  This Afactual conclusivity@ provision did not grant any new,
implicit factfinding authority to the courts of civil appeals; instead, it
limited the jurisdiction of the supreme court.[51] 
The supreme court was to confine itself to weighty legal principles and
conflicts in the law.[52]  The courts
of civil appeals could then consistently apply those enduring legal principles
to varying facts, but whenever the law otherwise permits or requires a
determination of Athe facts@ for some purpose in an appeal, the decision by a court of
civil appeals on those questions of fact was conclusive.[53] 
The Afactual conclusivity@ provision applies only to
those factual questions which a statute or other law requires or permits.[54]

A second 1891 constitutional
amendment created the Texas Court of Criminal Appeals that had exclusive
appellate jurisdiction over criminal cases.[55] 
The court of criminal appeals reviewed issues concerning the sufficiency of the
evidence exactly as the Texas Supreme Court and the Texas Court of Appeals had
done before it:  one single standard of review, but many different ways of
articulating that standard.  Here are some examples:

*          AIf the guilt of appellant is not made to appear to a reasonable
certainty, it is the duty of this court to reverse the judgment@; and [every element] Amust be proven beyond a reasonable doubt; proved by facts and
circumstances which lead with reasonable certainty to the conclusion sought,
and not left to speculation and surmises[.]@[56]

 

*          AThis court will not reverse unless there is such a manifest lack of
evidence as to make it apparent that the verdict was the result of prejudice or
that such verdict is against the great weight of the evidence.@[57]

 








*          AThe sanctity of the verdict of the jury is such that it must not
lightly be annulled in any case, but the law does not contemplate that one
shall suffer because of the verdict when the evidence, viewed in its strongest
light from the standpoint of the state, fails to make his guilt reasonably
certain.@[58] 

 

*          A[T]his court will reverse a case on the insufficiency of the evidence
only when the testimony, viewed in its strongest light from the standpoint of
the State, fails to make guilt of the accused reasonably certain.@[59]

 

*          AOrdinarily if facts be proved from any source which, if believed, would
warrant the conclusion of guilt, the evidence is sufficient to support the
conviction.@[60]

 

*          AThe jury is not bound to accept all or any of the testimony of a
witness, even though uncontradicted. It is not the prerogative of the appellate
court to interfere with the jury's finding on questions of fact where there is
evidence authorizing their verdict.@[61]

 

*          A[T]he jury has been made the exclusive judges of the facts proven and
the weight to be given to the testimony . . . this court does not, and should
not, assume to exercise the right to reverse on the facts, unless the evidence,
when viewed in its strongest light from the standpoint of the State, fails to
make guilt reasonably certain.@[62] 








*          AIn reviewing the sufficiency of the evidence to support the conviction,
we must view the evidence in the light most favorable to the verdict.  In doing
so, the verdict will be sustained if there is any evidence which, if believed,
shows the guilt of the accused.@[63]

Until Clewis in 1996, this
Court had consistently used a single standard (although the precise phrasing
varied) and reviewed the evidence in the light most favorable to the
factfinder, giving great deference to the jury=s credibility and weight
determinations.  But it did not hesitate to reverse a conviction if the
evidence failed to prove a defendant=s guilt Awith reasonable certainty,@ or Abeyond a reasonable doubt.@  Until Jackson in 1979, the
result of a finding of insufficient evidence in Texas was always the same: 
remand and retrial.  There was no acquittal on appeal when the evidence was
insufficient.  So matters stood until the United States Supreme Court mandated
a constitutional, due process review of sufficiency of the evidence for all
courts.

C.        The United States Supreme Court Announces
Constitutional Standards of Review and
Double Jeopardy Consequences of Insufficient Evidence.

 













In 1979, the Supreme Court, in Jackson
v. Virginia, held that the Due Process Clause of the federal constitution
requires the government to produce Asufficient evidence to justify a
rational trier of the facts to find guilt beyond a reasonable doubt.@[64]  The Court explicitly rejected a Ano evidence@ standard of review that it had
applied nineteen years earlier in Thompson v. Louisville.[65] 
In Thompson, the Supreme Court had concluded that Awe find no evidence whatever in the
record to support these convictions.  Just as >Conviction upon a charge not made
would be sheer denial of due process,= so is it a violation of due process
to convict and punish a man without evidence of his guilt.@[66]  In Jackson, the Court
explained that the Ano evidence@ doctrine Asecures to an accused the most elemental of due process
rights:  freedom from a wholly arbitrary deprivation of liberty[,]@[67] but that standard is inadequate for Aa question of evidentiary >sufficiency.=@[68]  Instead, the correct standard must
incorporate the prosecution=s burden of proofBbeyond a reasonable doubtBin a due-process review.  The Court
noted that a A>reasonable doubt= has often been described as one >based on reason which arises from the
evidence or lack of evidence.=@[69]  For example, a reasonable doubt
might arise because the verdict is manifestly against the great weight and
preponderance of the evidence or because there is nothing more than a mere
scintilla of evidence to support some element of the offense.  But, of course,
the reviewing court does not A>ask itself whether it believes
that the evidence at the trial established guilt beyond a reasonable doubt.@[70]  Rather, it Agives full play to the responsibility
of the trier of fact fairly to resolve conflicts in the testimony, to weigh the
evidence, and to draw reasonable inferences from basic facts to ultimate facts.@[71]  Thus, Aall of the evidence is to be considered in the light
most favorable to the prosecution@ because the reviewing court may
impinge upon A>jury= discretion only to the extent necessary to guarantee the
fundamental protection of due process of law.@[72]  

In sum, due process does not permit
legal sufficiency of the evidence to be measured by a Ano evidence@ (zone 1) standard; it must be
measured in terms of the prosecution=s constitutionally-mandated Abeyond a reasonable doubt@ burden of proof (which does not
correlate to any of the Azones@ in civil review standards fashioned on the Aby a preponderance of the evidence@ burden of proof), but giving great
deference to the jury=s role in assessing credibility, weight, and reasonable
inferences.[73]








The Jackson Alegal sufficiency@ standard is the one required by the
United States Constitution, and every state and federal court must comply with
that standard.[74]  It is the
only standard required for reviewing sufficiency of the evidence.  While noting
that Astates are free to set higher
standards of review[,]@ this Court quickly adopted the Jackson standard for
the review of sufficiency of the evidence.[75] 
We adhered to that single, constitutionally mandated standard for seventeen
years.[76]  Similarly,
the Texas Legislature declined hints in Griffin that it could set a
higher standard of review; it did not enact any statutes to heighten the Jackson
sufficiency review.








The legal consequence of a finding of
insufficient evidence under the Jackson standard is an acquittal on
appeal; any retrial is barred by double jeopardy principles.[77]
However, in its 1982 decision in Tibbs v. Florida,[78]
the Supreme Court held that, if a state chooses to conduct a factual, as well
as legal, sufficiency review, double jeopardy does not bar a retrial.[79] 
The Supreme Court explained, 

A reversal on this ground, unlike a reversal based on
insufficient evidence, does not mean that acquittal was the only proper
verdict.  Instead, the appellate court sits as a Athirteenth juror@ and disagrees with the jury=s resolution of the conflicting testimony.  This
difference of opinion no more signifies acquittal than does a disagreement
among the jurors themselves. . . . Similarly, an appellate court=s disagreement with the jurors= weighing of the evidence does not require the special
deference accorded verdicts of acquittal.[80]

 

Thus, an appellate reversal based on
the weight of the testimony Asimply affords the defendant a second opportunity to seek a
favorable judgment@ because such a reversal can occur only after the State has
produced sufficient evidence to convict and has persuaded the  jury to convict.[81]













Ironically, the Florida Supreme Court
had, in the Tibbs case itself, jettisoned its judicially created Afactual sufficiency@ review because it was conceptually
flawed and  unworkable in practice.[82]  Although it
noted that a state rule of criminal procedure allowed a trial judge to grant a
motion for new trial if the jury verdict is Acontrary to the law or weight of the
evidence,@ the Florida Supreme Court concluded that Aan appellate court should not retry a
case or reweigh conflicting evidence submitted to a jury or other trier of
fact.@[83]  ALegal sufficiency alone, as opposed
to evidentiary weight, is the appropriate concern of an appellate tribunal.@[84]  The court recognized that the
language in some earlier opinions was ambiguous and could be interpreted as
calling for a review of factual sufficiency, but the notion of
factual-sufficiency review had Aa questionable historical foundation.@[85]  Furthermore, the court concluded
that A[c]onsiderations of policy support,
if not dictate@ elimination of factual-sufficiency review on appeal.[86] 
First, the court noted that the proper role of appellate courts in Florida
criminal cases was to leave questions of the weight of the evidence to the
trier of fact.[87]  Second,
eliminating factual-sufficiency review Awill avoid disparate appellate
results@ or further review to determine
whether a reversal is based on legally or factually insufficient evidence.[88] 
Third, abolishing a factual-sufficiency review will Aeliminate any temptation appellate
tribunals might have@ to reverse for factual insufficiency to avoid the
double-jeopardy bar on retrials for legal insufficiency.[89] 
The Florida Supreme Court concluded that twelve ordinary citizens sitting as
jurors are better able to determine the credibility of the witnesses and the
weight of the testimony than are appellate judges reading the written record. 
A factual-sufficiency review on appeal contradicts that fundamental fact.

D.        Texas Standards for Reviewing the
Sufficiency of Evidence to Reject an Affirmative Defense. 

 








The first time that this Court
directly addressed the concept of factual-sufficiency review was in Schuessler
v. State,[90] a 1986 case
in which the court of appeals had held that the jury=s rejection of his affirmative
defense of insanity was against the great weight and preponderance of the evidence.[91] 
This Court rejected that standard, even for affirmative defenses in which the
defendant bears the burden of proof by a preponderance of the evidenceBa civil law standardBbecause there can be Ano reweighing or reclassifying of the
evidence by the appellate court.@[92]  This Court then appliedBto the rejection of an affirmative
defenseBthe same Jackson standard of
legal sufficiency that it routinely applied to the elements of the criminal
offense.[93]

Judge Clinton dissented because the
issue of insanity is not an element of the criminal offense and thus is not
governed by the due process standard set out in Jackson.[94] 
He explained,

          When an affirmative
defense is not an element of an offense charged and Winship is not
implicated by allocation of burden of proving an affirmative defense, it
follows that Athe critical inquiry on review of
the sufficiency of the evidence to support a criminal conviction@ prescribed by Jackson v. Virginia is irrelevant to a review of sufficiency of evidence
relating to an affirmative defense.  The trier of fact was not called on to
view the evidence in the light most favorable to the prosecution in order to
find Athe essential elements of the crime beyond a
reasonable doubt.@  Rather, its function was to determine whether an
accused has proved an affirmative defense Aby
a preponderance of the evidence.@[95]  

 








Judge Clinton=s position was adopted four years
later in Meraz v. State,[96] a case in
which the defendant appealed the jury=s rejection of his plea of
incompetence.  In Meraz, this Court applied the civil law
factual-sufficiency standard when the party who bears the burden of persuasion
by a preponderance of the evidence complains that the rejection of his issue is
Aagainst the great weight and
preponderance of the evidence.@[97]  This Court reasoned that 

the utilization of the standard of review
constitutionally reserved for the courts of appeals and required by the Texas
Supreme Court to be applied in situations where the burden of proof was on the
individual claiming factual insufficiency does not impede a defendant from
seeking a factual review relevant to his affirmative defense nor does it
preclude him from a sufficiency review as to whether there was sufficient
evidence to warrant a conviction.  The two reviews are mutually exclusive.[98]

 

Indeed, this Court was exactly
correct:  the two different types of review are mutually exclusive.  Review for
legal sufficiency under the Jackson Abeyond a reasonable doubt@ standard is required for every
element that supports a conviction, but a sufficiency-of-the-evidence review
under civil standards is appropriate when reviewing affirmative defenses in
which the defendant bears a burden of Apreponderance of the evidence.@[99]  In Meraz, this Court held
that the Afactual conclusivity clause@ of the Texas Constitution applies
when the defendant bears the burden of proof by a preponderance of the
evidence.[100]               













And this Court followed Meraz
in Bigby v. State,[101] by
reviewing the sufficiency of the evidence that supported the jury=s rejection of the defendant=s affirmative defense of insanity in
a capital murder trial.  In Bigby, as in Meraz, the burden of
proof was on the defendant to establish his defense by a preponderance of the
evidence.[102]  In that
context, use of the civil standards adopted by the Texas Supreme Court is
entirely appropriate.   In these cases, Texas courts have the power and
authority to conduct a sufficiency review of the evidence under controlling
supreme court precedent because:  (1) both the burden of production and
persuasion is on the defendant; and (2) that burden is the civil standard of
proof Aby a preponderance of the evidence.@[103]  Both Meraz and Bigby
are in line with the historical and jurisprudential underpinning of Texas civil
law and the Texas Constitution.  We followed our brethren on the Texas Supreme
Court in applying the factual conclusivity clause to those Aquestions of fact@ for which the proponent bears the
burden of proof by a preponderance of the evidence.[104] 
And we should continue to follow that court=s development of
sufficiency-of-the-evidence review when the proponent bears the burden of proof
by a preponderance of the evidence.[105]

The real issue is not whether Afactual sufficiency@ review exists in Texas law.  The
issue is whether Afactual sufficiency@ review applies to the elements of a
criminal offense that the State must prove beyond a reasonable doubt.  And, of
course, both this Court and the courts of appeals have the authority to review Athe facts@ as well as the law.[106] 
If Athe facts@ do not establish every element
beyond a reasonable doubt, those Afacts@ require an appellate court to acquit
the defendant under Jackson.  








But two years after this Court
delivered Meraz, one court of appeals, in Stone v. State,[107]
applied the Meraz reasoning to a factual-sufficiency review of the
elements of the offense, even though those elements must be proven beyond a
reasonable doubt and are subject to a constitutional sufficiency review under Jackson.[108] 
The court of appeals stated that, under the Afactual conclusivity clause,@ it had the power to review the
factual sufficiency of the evidence to support a conviction as well as the
power to review the factual sufficiency to support affirmative defenses:

[T]he Jackson test does not logically preclude factual-sufficiency review. Jackson requires the appellate court to view the evidence in
the light most favorable to the prosecution.  Jackson permits the states to devise tests
for factual-sufficiency review that do not indulge in presumptions in favor of
either side.  Because Jackson does not preclude factual-sufficiency
review and because we see nothing in the Meraz
opinion that limits the pre-existing factual-sufficiency review power of the
courts of appeals to matters the defendant must prove, we conclude that a
criminal defendant is entitled to a factual-sufficiency review as a matter of
state constitutional law.[109]

 








Jackson does not, of course, preclude a
state from enacting a factual-sufficiency review, but neither does it suggest
that such review is necessary, appropriate, or useful.  Until the court of
appeals=s decision in Stone, no Texas
court had found a constitutional right to a factual-sufficiency review of the
elements of a criminal offense.[110]  There is
nothing in the Afactual conclusivity@ clause of the Texas Constitution
that grants authority to the courts of appeals to create a factual-sufficiency
review of criminal convictions absent some statutory enactment or other law. 
Because that provision does not grant any new authority to the courts of
appeals, a defendant does not have a constitutional Aright@ to a factual-sufficiency review of
his conviction based solely upon the Afactual conclusivity@ clause.  Any right to a
factual-sufficiency review of the elements of a criminal offense must exist
elsewhere in the law, if at all.  Although the Texarkana Court of Appeals
adopted the Stone reasoning and result,[111]
other courts of appeals rejected it.[112] 









The reasoning and result in Stone
were premised upon the proposition that the intermediate courts of appeals are
vested with the authority to review factual sufficiency in criminal cases under
Article V, section 6 of the Texas Constitution (the factual conclusivity
clause).[113]  However,
the constitutional provision says nothing about any Texas court=s authority to conduct a
factual-sufficiency review of the evidence in a criminal case.  As discussed
above, it is only when the law otherwise allows or requires the review of a
factual question that the conclusivity clause applies.[114] 









In 1979, this Court had held, in White
v. State, that we have Ano fact jurisdiction as do the Courts of Civil Appeals, and
cannot >unfind= a vital fact finding by a jury. 
Since we do not have the jurisdiction to pass upon the great weight and
preponderance of the evidence,@[115] the defendant=s contention that his court could
review factual sufficiency was rejected.[116] 
If this Court, in 1979, did not have jurisdiction to conduct a
factual-sufficiency review, the courts of appeals could not gain any Afactual conclusivity@ power from us when, two years later,
they were authorized to review criminal cases.  

This conclusion was reiterated by the
Texas Legislature in 1981 when it amended what is now section 22.225 of the
Texas Government Code.  That provision states, AA judgment of a court of appeals is
conclusive on the facts of the case in all civil cases.@[117]  This section says nothing about the
conclusivity of factual findings in criminal cases.[118] 
Furthermore, this Court had, until Clewis, always held that neither we
nor the courts of appeals had any jurisdiction to assess the factual
sufficiency of evidence in a criminal case: 








It is well settled that our Court does not have
jurisdiction to pass upon the weight and preponderance of the evidence or
"unfind" a vital fact.  More specifically, our determinations of
sufficiency of the evidence have never involved passing upon the weight and
preponderance of the evidence. . . . In deciding sufficiency of the evidence
questions this Court views the evidence in the light most favorable to the
verdict. . . . Sufficiency of the evidence as determined by this Court is a
question of law.  It is irrelevant whether we as a court believe the evidence,
or believe that defense evidence "outweighs" the State's Evidence. 
If there is any evidence that establishes guilt beyond a reasonable doubt, and
if the trier of fact believes that evidence, we are not in a position to
reverse the judgment on sufficiency of the evidence grounds.[119]

 








Furthermore, the Code of Criminal
Procedure contains two provisions that explicitly state that the jurors are the
exclusive judges of facts in jury trials.[120] 
Articles 36.13 and 38.04 are clear statutory mandates which cannot be
reconciled with a judicially created doctrine that authorizes the courts of
appeals to redetermine the facts and the weight of the testimony or Aunfind@ facts that the jury has found. 
There are no analogous mandatory provisions like these articles for civil
cases.[121]  Thus,
trial courts and courts of appeals may have implicit authority to redetermine
or Aunfind@ facts and to reweigh evidence in
civil cases, but they do not have similar authority in criminal cases because
articles 36.13 and 38.04 clearly forbid any such reweighing or Aunfinding.@             

E.        Clewis.

In 1996, this Court resolved the
split in the courts of appeals on the issue of factual- sufficiency review.  In
a fractured 5-4 opinion in Clewis v. State,[122]
this Court rejected Justice LaGarde=s thorough explanation in the court
of appeals of why factual-sufficiency review in criminal cases was neither
authorized nor appropriate.[123]  Instead,
the Court adopted the reasoning and result in Stone.[124] 
This Court cited an example to explain why factual-sufficiency review was an
important safeguard against runaway juries:








The prosecution=s
sole witness, a paid informant, testifies that he saw the defendant commit a
crime.  Twenty nuns testify that the defendant was with them at the time, far
from the scene of the crime. Twenty more nuns testify that they saw the
informant commit the crime.  If the defendant is convicted, he has no remedy
under Jackson because the informant=s
testimony, however incredible, is legally sufficient evidence.[125]

 

Of course, this was a law-school
hypothetical;  no one had heard of such a bizarre jury which would reject the
eyewitness testimony of forty nuns and believe a single paid informant
instead.  Would such a result be the product of a Arational@ or Areasonable@ jury under Jackson?  Would
the United States Supreme Court (or this Court) uphold such a verdict under its
carefully crafted language that, given this evidence, any Arational trier of fact could have found the
essential elements of the crime beyond a reasonable doubt?@  Under the hypothetical as
presented, it would appear to be an irrational verdict.  But suppose that the
defendant were a priest?  Or that the defendant had just donated a million
dollars to the local convent?  Or that the nuns were inconsistent and
contradictory on all of the underlying details of their testimony?  We defer to
the jury=s credibility and weight
determinations because they have seen and assessed the witnesses in person, and
they have heard all of the evidence, not just the bare-bone facts of a
hypothetical.

Nonetheless, in Clewis, this
Court judicially created a new appellate standard for reviewing the factual
sufficiency of evidence on top of the legal sufficiency review which had, under
various phrasing, existed in Texas for 150 years.  Under that newly minted
standard,








an appellate court reviews the factfinder=s weighing of the evidence and is authorized to
disagree with the factfinder=s
determination.  This review, however, must be appropriately deferential so as
to avoid an appellate court=s substituting
its judgment for that of the jury.[126]

 

Thus, Clewis empowered the
courts of appeals to act as a Athirteenth juror@ (one who was not even present to see
and hear the witnesses) and disagree with the factfinder=s determination, but to be
deferential to the factfinder=s judgment as it did so.  This standard was ambiguous and
contradictory from the beginning.

In the past ten years Texas courts
have seen how it works in practice.  Our decision in Clewis has been
cited, distinguished, explained, criticized, limited, clarified, or applied in
more than 5,000 cases, eleven law review articles, and nine treatise sections.[127] 
It has kept lawyers, judges, and paper mills busy.  We have Aclarified@ or Arefined@ Clewis in at least six cases
ourselves because we did not initially explain precisely how a
factual-sufficiency review differs from a legal sufficiency review.  It is to
those cases I now turn.

F.        Attempts
to Clarify Clewis.








The first clarification came in the
same year that Clewis was decided.  In Jones v. State,[128]
a capital murder case, this Court stated that a factual-sufficiency review
requires the appellate court to review all of the evidence, not just the
evidence which supports the verdict.[129] 
AThe appellate court reviews the
evidence weighed by the jury which tends to prove the existence of the
elemental fact in dispute, and compares it to the evidence which tends to
disprove that fact.@[130]  But the reviewing court must be
appropriately deferential to the factfinder, 

finding fault only when Athe verdict is against the great weight of the evidence
presented at trial so as to be clearly wrong and unjust.@  Examples of such a wrong and unjust verdict include
instances in which the jury=s finding is Amanifestly unjust,@ Ashocks the conscience,@ or Aclearly demonstrates bias.@[131] 

 

This Court=s conscience was not shocked by the
jury=s verdict in Jones.  We
rejected the defendant=s factual-sufficiency claim because there was conflicting
evidence of whether he

intended to shoot the murder victim.[132]









In 1997, the year after Clewis
was decided, this Court held, in Cain v. State,[133]
that the courts of appeals must continue to give considerable deference to the
original factfinder under a factual-sufficiency review.[134] 
In that case we reversed the court of appeals because Ait was not deferential to the jury=s determination of witness
credibility.@[135]  Thus, the weight to be given to Acontradictory testimonial evidence is
within the sole province of the jury, because it turns on an evaluation of
credibility and demeanor.@[136]  Under this deferential standard,
however, the testimony of the forty nuns in the Clewis hypothetical
could well be rejected because acceptance of their testimony turns on an
evaluation of credibility.[137]








Our next major foray into an explication
of Clewis was in  Johnson v. State[138]
in 2000.  There we found that the court of appeals had correctly found the
evidence factually insufficient to support the aggravated sexual assault victim=s identification of the defendant
because she was not Aa hundred percent positive@ that he was her assailant and DNA
tests showed that the defendant and assailant were both members of a group
consisting of 8.5% (according to the State=s expert) to 26% (according to the
defense expert) of the black population.[139] 
We stated:

The degree of deference a reviewing court provides
must be proportionate with the facts it can accurately glean from the trial
record.  A factual sufficiency analysis can consider only those few matters
bearing on credibility that can be fully determined from a cold appellate
record.  Such an approach occasionally permits some credibility assessment but
usually requires deference to the jury=s
conclusion based on matters beyond the scope of the appellate court=s legitimate concern.  Unless the available record
clearly reveals a different result is appropriate, an appellate court must
defer to the jury=s determination concerning what weight to give
contradictory testimonial evidence because resolution often turns on an
evaluation of credibility and demeanor, and those jurors were in attendance
when the testimony was delivered.[140] 

 

After discussing both Cain and
Johnson, Professor Dix, for one, concluded that Ait is arguable that little meaningful
difference exists between Clewis factual-sufficiency review and
traditional review of the evidence for legal sufficiency.@[141] 













In 2001, we took another stab at
clarifying Clewis in Goodman v. State.[142] 
In that case, we acknowledged that A[p]erhaps the problem is that this
Court has not always been crystal clear in explaining how the courts of appeals
should analyze factual-sufficiency questions in a criminal case.@[143]  We relied heavily upon Chief
Justice Calvert=s 1960 law review article explaining Ano evidence@ and Ainsufficient evidence@ standards in civil cases[144]
and distinguished the two types of civil factual-insufficiency zones.  In zone
two, Athe evidence in support of the
existence of a vital fact, considered standing alone, is factually too weak to
support it.@[145]  In zone four, there is conflicting
evidence, A[s]ome evidence supports a positive inference, and some evidence supports
a negative inference.@[146]  When the conflicting evidence is in
Afair equipose,@ a reviewing court may not conclude
that it is against the great weight and preponderance of the evidence or that
it is manifestly unjust.  Only when the evidentiary scales tip Aradically@ toward a negative finding on an
essential element may the reviewing court exercise any Athirteenth juror@ role and conclude that the jury=s verdict is Aclearly wrong.@[147]  The problem with Goodman,
like that of all of our Texas factual-insufficiency cases, is that it attempted
to force a square peg into a round hole.  That is, the Jackson
legal-sufficiency test already incorporates the State=s burden of proof and persuasionBbeyond a reasonable doubtBinto its analysis while the civil
standard uses a zone theory of analysis to inferentially incorporate a Apreponderance of the evidence@ burden of proof.  The zone theory
may be useful for analyzing sufficiency issues for a defendant=s affirmative defense because those
defenses must be proven by a preponderance of the evidenceBthe same standard as in Texas civil
law.  But it does not translate into a second-tier sufficiency review when the
State must prove every element beyond a reasonable doubt and the reviewing
court must ensure that there is sufficient evidence to support a reasonable,
rational verdict with proof beyond a reasonable doubt.  

Under Clewis, the reviewing
court views all of the evidence in a neutral or impartial light, not in the
light most favorable to the prosecution (or the jury=s verdict).[148] 
This Aneutral light@ review seems to be the driving force
behind Clewis: it circumvents Jackson=s Ain the light most favorable to the prosecution@ requirement.  While this phrase
might sound like pro-prosecution rhetoric, in fact it defers only to the
factfinder=s verdict, because the only criminal trials reviewed for sufficiency of
the evidence on appeal are those in which the factfinder (whether judge or
jury) agreed with the prosecution. The prosecution can never appeal the
sufficiency of evidence when a judge or jury acquits a defendant, regardless of
how Amanifestly wrong,@ Aunjust,@ or irrational the factfinder=s verdict  may appear to be.








In our 2003 Swearingen v. State[149]
decision, we reiterated the importance of giving deference to the factfinder=s credibility and weight
determinations, i.e., the reviewing court must look at the evidence in
the light most favorable to the jury=s assessment of credibility and
weight.

Although authorized to disagree with the jury=s determination even if probative evidence exists
which supports the verdict, a reviewing court must give due deference to the
fact finder=s determinations concerning the weight and credibility
of the evidence and will reverse the fact finder=s determination only to arrest the occurrence of a manifest injustice. 
In assessing the factual sufficiency of the evidence to support a conviction we
consider all the evidence in a neutral light.[150]

 

These two sentences are internally
inconsistent.  One cannot view the evidence in a neutral light while at the
same time giving deference to the factfinder=s determinations of weight and
credibility.  













In our 2004 decision in Zuniga v.
State,[151] we again
marched into the field of factual insufficiency, once more acknowledging that
the evolution of factual-sufficiency review Ahas been somewhat confusing.@[152]  In Zuniga, we further
refined the zone four  Aagainst the great weight  of the evidence@ prong of factual insufficiency, and
stated:

We will attempt to resolve some of the confusion
created by the standard that has developed since Clewis by:  1) linking
the burden of proof at trial to the standard of review and 2) avoiding language
suggestive of a preponderance-of-the-evidence burden of proof. . . . There is only one question to be answered in a
factual-sufficiency review:  Considering all of the evidence in a neutral
light, was a jury rationally justified in finding guilt beyond a reasonable
doubt?  However, there are two ways in which the evidence may be insufficient. 
First, when considered by itself, evidence supporting the verdict may be too
weak to support the finding of guilt beyond a reasonable doubt.  Second, there
may be both evidence supporting the verdict and evidence contrary to the
verdict.  Weighing all
the evidence under this balancing scale, the contrary evidence may be strong
enough that the beyond-a-reasonable-doubt standard could not have been met, so
the guilty verdict should not stand.  This standard acknowledges that evidence
of guilt can Apreponderate@ in favor of conviction but still
be insufficient to prove the elements of the crime beyond a reasonable doubt. 
Stated another way, evidence supporting guilt can Aoutweigh@ the contrary proof and still be
factually insufficient under a beyond-a-reasonable-doubt standard.[153]

But incorporating the Abeyond a reasonable doubt@ standard into factual-sufficiency
review returned us to the Jackson legal sufficiency standard.  Compare
the wording of the two standards:








*          Athe relevant question is whether, after viewing the evidence in the
light most favorable to the prosecution, any rational trier of fact
could have found the essential elements of the crime beyond a reasonable doubt@[154] (legal sufficiency);

 

*          AConsidering all of the evidence in a neutral light, was a jury
rationally justified in finding guilt beyond a reasonable doubt?@[155] (factual sufficiency).

 

One is hard-pressed to adequately
explain the distinction between these two standards of review, yet a finding of
legal insufficiency leads to an acquittal, while factual insufficiency leads to
a retrial.  The only way that these two standards can be distinguished is by
viewingBin a factual-sufficiency reviewBall of the evidence with divine
neutrality and refusing to give any deference to the jury=s assessment of weight and
credibility.  This type of review explicitly makes the reviewing court a Athirteenth juror@ who makes an independent, de novo
determination of credibility and the weight to be given the testimony and the
inferences to be drawn from the base facts.  Such a review violates articles
36.13 and 38.04 of the Code of Criminal Procedure because the legislature has
explicitly decreed that the jury is Athe exclusive judge of the facts
proved, and of the weight to be given to the testimony.@[156]  Therefore, I certainly agree with
the Court=s decision today to overrule, or at least modify, Zuniga. 








But I would go further.  I, like the
Florida Supreme Court did in Tibbs, would conclude that there is little
historical basis in Texas for creating a factual-sufficiency review as an
addition to the constitutionally mandated legal-sufficiency standard.  I would
further conclude that neither Clewis nor its progeny adequately explain
the dynamics of a factual-sufficiency review or how appellate courts are to
view the evidence both Aneutrally@ and with deference to the factfinder.  








Ironically, at the very time we were
attempting to devise a workable structure by which to review the elements of a
criminal offense under a civil-law standard that depended upon a
preponderance-of-the-evidence burden of proof, our brethren on the Supreme
Court of Texas were attempting to devise a workable standard for reviewing the
sufficiency of evidence when a party has a heightened burden of proofBi.e., when the burden of proof was Aclear and convincing.@  They, like us, had a difficult time
trying to force a square peg into a round hole of factual sufficiency review. 
In Southwestern Bell Telephone Co. v. Garza,[157]
that court seemingly came to the same conclusion that I would reach: the
factual conclusivity clause applies only to Aquestions of fact@ for determining the sufficiency of
evidence when the proponent bears a burden of proof by a preponderance of the
evidence.[158]  And, after
City of Keller, even that proposition may be doubtful.  

I turn now to the question of whether
the creation and application of a factual- sufficiency review by appellate
judges is nonetheless good public policy that should be maintained despite its
manifold problems.

                                                                            III.

The creation of a factual-sufficiency
review in Texas criminal cases has come at an enormous jurisprudential price. 
As noted above, Clewis has been cited, discussed, or applied in almost
6,000 Texas criminal cases since 1996.  This Court has spent considerable time
and energy in its attempts to clarify Clewis.  Litigants and the courts
of appeals have expended enormous resources in attempting to understand Clewis
and apply the factual-sufficiency construct to the cases before them.  However,
as Professor Dix has noted, the courts of appeals have found the evidence
factually insufficient in a minuscule number of cases.[159]








Nonetheless, such an enormous
expenditure of judicial time and resources might be a worthwhile investment if
a factual-sufficiency review were directed toward a widely acknowledged Aevil@ in the Texas criminal justice
system, and if it solved that serious problem effectively and efficiently. 
Unfortunately, there is nothing in Clewis (or its  progeny) that points
to any systemic criminal justice problem that a factual-sufficiency review
might have been designed to resolve.  Although this Court set out the Aforty nuns@ hypothetical in Clewis to
show how a Jackson legal-sufficiency review might uphold such a
conviction whereas a factual-sufficiency review would presumably reverse such a
conviction, I am unable to find any Aforty nun@ type cases.  Professor Dix has cited
only twelve published cases in which the courts of appeals have reversed on
factual insufficiency grounds,[160] and most of
these were split decisions, while others were vacated by this Court because the
lower court used the Awrong@ Clewis analysis.

Furthermore, the Aforty nuns@ scenario does not pose a serious
threat to the integrity of the criminal-justice system in the rest of the
United States.  I am aware of only two other jurisdictions, New York and the
United States military courts, that currently employ a factual-sufficiency
review.  In each of those jurisdictions, a statute explicitly authorizes such a
review.[161]  There is
no such statute in Texas.  








The jurisprudential evil to which a
factual-sufficiency review might legitimately be a solution is the conviction of
an innocent person by a biased, irrational jury.   But that is precisely what
the Jackson legal sufficiency review is designed to prevent.  I am
unaware of any evidence that this standard is insufficient protection of a
defendant=s right to legally sufficient proof of every element beyond a reasonable
doubt.

One of the practical problems that
the Florida Supreme Court noted when it rejected its factual-sufficiency
doctrine was the Atemptation appellate tribunals might have to direct a retrial
merely by styling reversals as based on >weight= when in fact there is a lack of
competent substantial evidence to support the verdict or judgment and the
double jeopardy clause should operate to bar retrial.@[162]  Although I am confident that an
appellate court would not knowingly reject a valid complaint of legal
insufficiency and instead grant a factual-insufficiency claim to avoid a double
jeopardy bar, there may be a natural disinclination to award an appellate
acquittal to a defendant who has been convicted by a jury of twelve citizens. 
Given the barely visible distinction between these two standards of review, a
defendant who should be entitled to a complete acquittal may be forced, because
of a Acompromise@ appellate factual-sufficiency
review, to spend the time, money, and mental anguish to undergo another trial
and perhaps another jury conviction.  








To the extent that Clewis
addresses a problem in the Texas criminal-justice systemB manifestly unjust convictions that
shock the conscience of the appellate courtsBthat problem can be resolved more
satisfactorily in other ways.  

First, reviewing courts must apply
the Jackson legal sufficiency standard robustly, taking into account all
of the evidence, although viewed in the light most favorable to the jury=s verdict.[163] 
If that evidence supports a rational and reasonable finding of guilt beyond a
reasonable doubt, it cannot be said that the jury=s verdict is manifestly unjust or
shocks the conscience of the reviewing court.  The verdict is either rational
and reasonable or it is not; it cannot be Asemi-rational@ and still meet the Jackson
standard.  There is no jurisprudential value in reversing a rational, reasonable
verdict and forcing the parties to go back and do it again.  








Second, if the legislature is
concerned by potential Arunaway@ juries that render guilty verdicts which are simultaneously
rational and reasonable, yet biased and manifestly unjust, it may enact a
statute mandating Afactual sufficiency@ review.  The most appropriate Athirteenth juror@Bthe person authorized to second guess
the jury=s credibility and weight decisionsBwould be the trial judge who has at
least seen all of the witnesses first-hand, and judged their demeanor and
credibility on a personal basis.  He, much more than the distant appellate
courts relying solely upon the cold written record, can take the pulse of the
jury, the advocates, the witnesses, and the defendant.  Further, he would be
privy to in-chamber or side-bar discussions not available to the jurors.  If
there is to be a factual-sufficiency review, it ought to be pursued in a motion
for new trial under legislatively enacted statutes and standards.  

Third, in the very same year that
this Court created Afactual sufficiency@ review in Clewis, it also recognized
Aactual innocence@ claims in post-conviction writs of
habeas corpus.[164]  Although
such claims depend upon newly discovered evidence that was unavailable at the
time of trial, this is certainly one mechanism to exonerate those whom a jury
should not have convicted.[165]

Last (and least), as Judge White
pointed out in his Clewis dissent, A[i]f a defendant=s verdict of guilt confining him to
prison were manifestly unjust due to a failure of the sufficiency of the
evidence, would not this qualify as a ground of innocence to warrant a grant of
executive clemency?@[166]








In sum, there are alternate methods
by which the criminal justice system can address the A40 nuns@ hypotheticalBthe problem of a rational jury which
reaches a unanimous guilty verdict, based on evidence that proves every element
of the offense beyond a reasonable doubt, which is, nevertheless, Aclearly wrong and unjust.@

I think that the Clewis Afactual sufficiency@ review is internally inconsistent
and denigrates the role of juries in the state of Texas by requiring a Aneutral@ review of the evidence, while
simultaneously espousing deference to the jury=s exclusive role in assessing
credibility and the weight to be given to the evidence.  It has not contributed
to the integrity of the appellate review process; it has led to inconsistent
results; and it has required numerous, but futile, attempts to clarify its
content and application.  Furthermore, the dual legal- and factual-sufficiency
review mandated by Clewis upended over 150 years of Texas case law that
had employed a single standard for the review of sufficiency of the evidence in
a criminal case. 

                                                                            IV.

The present case exemplifies the
problems created by the Clewis factual-sufficiency review because it
deals with conflicting inferences that might reasonably be drawn from the same
basic facts.  Twelve jurors, one trial judge, and the Chief Justice of the Waco
Court of Appeals all concluded that it was a reasonable inference that
appellant attempted to commit sexual assault upon Jennifer Romo after he
entered her home without consent, dropped his shorts to expose his erect penis,
came toward her as she grabbed a butcher knife to defend herself, and attempted
to pull it out of her hands.  








Two justices of the Waco Court of
Appeals concluded that an even more reasonable inference was that appellant did
not attempt to commit sexual assault because (1) he Adid not say anything threatening or
anything to indicate he intended to sexually assault [Jennifer] Romo@; (2) Ahis conduct in grabbing the knife
could also be viewed as an effort to defend himself@; (3) Ahe did not flee the apartment complex@; and (4) Jennifer=s father Atestified that her emotional state at
the time was one primarily of anger and confusion rather than fear.@[167]  All of these basic facts are true. 
A rational trier of fact might well conclude from these facts that appellant
was not guilty of attempting to sexually assault Jennifer Romo.  This jury did
not do so.  It rejected this inference and instead concluded, from the totality
of the basic facts proven, that appellant did attempt to commit sexual
assault.  Drawing inferences from basic facts to the elements of the offense is
the jury=s job as long as those inferences are
rational and reasonable.  The mistake that Clewis invites is the
appellate court=s substitution of what it considers Aa more reasonable@ inference from the basic facts than
the reasonable inference that the jury did, in fact, draw.








The issue of whether appellant
attempted to sexually assault Jennifer Romo was well presented by both the
State and defense in this case.  Both advocates cogently argued their
respective positions that the evidence did or did not support a finding, beyond
a reasonable doubt, that appellant intended to sexually assault Jennifer Romo
and had attempted to do so.  Appellant emphasized that Jennifer Romo was Amad,@ not Ascared@ by appellant=s actions, and she Ahad no idea what [appellant=s] intent was.@  He noted that appellant never
touched Jennifer or her clothes.  The jury rejected the inferences that
appellant asked it to draw.  It chose to agree with the inferences drawn from
this evidence that support the conclusion that appellant did, in fact, attempt
to sexually assault Jennifer Romo.  Two members of the court of appeals agreed
with appellant=s argument.  But that agreement does not render the evidence either
factually or legally insufficient, nor does it mean that the jury=s verdict was the product of bias or
the result was manifestly unfair.  Factual disagreements and disputes lie at
the heart of our jury system.








We are most likely to invoke the
collective wisdom of a jury when the basic facts are in dispute or when the
logical inferences to be drawn from base facts conflict.  Trials are generally
unnecessary in the Aeasy@ cases, the Awhale in a barrel@ cases; they generally result in a
plea bargain.  It is when the direct testimony conflicts or the logical
inferences that may be drawn from the circumstantial evidence differ, that a
jury is needed to resolve those conflicts.  However, it is precisely in those
cases that an appellate court is most likely to second guess a jury, but it
does so without considering whether the jury=s credibility and weight decisions
were made on the basis of irrational bias and prejudice as opposed to rational
deduction or induction.  The fact that a jury chose one rational alternative as
opposed to another rational alternative is not a basis for reversal, but that
is precisely what the Clewis standard permits.  It permits a fortuitous Alightning strikes@ reversal based on whether an
appellate court (without personally seeing or hearing the witnesses) differs
with a jury on its choice of what inference should be drawn or what weight
should be given to certain direct testimony.  Although reversals under Clewis
are rare, they are also random, inconsistent, and based primarily on Athe luck of the draw.@

I would therefore overrule Clewis
and all of its progeny, including Zuniga.  Because the majority lops off
only the most recent branch of Clewis and does not address the root of
the problem, I most respectfully dissent.

 

Filed:  October 18, 2006

Publish 









[1]
443 U.S. 307 (1979).





[2]
Watson v. State, 160 S.W.3d 627, 630 (Tex. App.BWaco 2005) (quoting Zuniga v. State,
144 S.W.3d 477, 485 (Tex. Crim. App. 2004)) (internal quotations omitted).  





[3] Id. at 631 (Gray,
C.J., dissenting).





[4]
See Jackson, 443 U.S. at 318.





[5]
As a practical matter, an appellate reversal for factually insufficient
evidence may result in the State offering a particularly advantageous plea
bargain or dismissing the case because, after years in the appellate orbit, the
witnesses are unavailable, judicial resources are limited, and trial dockets
are crowded.  Whether either of these results serves the public interest is
doubtful.





[6]
Paul D. Carrington et al., Justice on
Appeal 11 (1976).





[7]
Jackson, 443 U.S. at 318.





[8]
Id. at 319 (emphasis in original; citations omitted).





[9]
Id. (emphasis in original).





[10]
Webster=s New Twentieth Century Dictionary Unabridged
1496 (2d ed. 1983).





[11]
Merriam-Webster=s Dictionary of Law (1996)
(http://dictionary.lp.findlaw.com/scripts/search.pl?co=dictionary.lp.findlaw.com&s=rational).





[12]
Jackson, 443 U.S. at 319 (noting that this criterion Aimpinges upon >jury= discretion only to the
extent necessary to guarantee the fundamental protection of due process of law@).





[13]
922 S.W.2d 126, 134 (Tex. Crim. App. 1996) (quoting Stone v. State, 823
S.W.2d 375, 381 (Tex. App.BAustin
1992, pet. ref=d)).





[14]
Dallam 407 (1841).





[15]
Id. at 407-10 (concluding that AWe
believe that such a right is in accordance with the genius and spirit of our
institutions, and secured to him by the constitution and laws of this country@).





[16]
Id. at 411.





[17]
The card game faro Aenjoyed
great popularity during the . . . 19th Century in the United States
. . . where it was practiced by >Faro
dealers= such as the
infamous Doc Holliday.@ 
Wikipedia, The Free Encyclopedia,
Faro, at http://en.wikipedia.org/wiki/faro_%28card-game%29 (last visited September
1, 2006).





[18]
Smith, Dallam at 407, 411.





[19]
Id. at 411.





[20]
The court reasoned that, if the defendant=s
argument were accepted, it Awould
protect from just punishment any offender, however flagrant his offense, if
committed before the passage of the act dividing the county@ because almost all former
counties in Texas were re-divided and renamed after the Republic of Texas was
created.  Id.

But what, we will ask, was the
intention of the legislature in passing the act creating the county of Travis? 
Was it to protect the guilty from punishment?  Was it to open the prison doors
to them that were bound, without making any compensation to an injured
community and the violated laws?  Was it to encourage crime and insult the
majesty of the constitution?  No!  It had other motives and other intentions in
view.  Of this we are certain.  And what they intended is binding upon us in
expounding the law. 

Id. at 411-12.  So,
although the supreme court considered Athe
facts@ of the case,
the issue was decided upon a legal principleBa
defendant may be tried in a newly-created county in which he had committed the
offense, regardless of what that county was called at the time of the offense.





[21]
43 Tex. 390 (1875).





[22]
Id. at 391-92.





[23]
The charge simply said that the defendant was charged A>with
the theft of a certain cow, the property of Mrs. Lizzie Hill . . .@  Id. at 392-93,
402-03.





[24]
Id. at 398-403.





[25]
Id. at 394.





[26]
Id. 





[27]
Indeed, in Bishop, the supreme court was explicit: 

Athe
jury are the exclusive judges of the facts in every criminal cause.@ . . . Being made the
exclusive judges of the facts, the jurors, in contemplation of the law, are
deemed to have the capacity to exercise those processes of thought and powers
of combination which are sufficient to understand, without the aid of the
judge, their relations and relative importance in arriving at a conclusion.

Id. at 397 (citations
omitted).





[28]
See Clewis, 922 S.W.2d at 130 (citing Smith and Bishop); Bigby
v. State, 892 S.W.2d 864, 872 (Tex. Crim. App. 1994) (quoting Smith
and Bishop).





[29]
Smith, Dallam at 409-10.  The prosecutor=s
position was that, in criminal cases, the supreme court could exercise its
jurisdiction Aonly by
writ of error, and not by appeal.@ 
Thus,

by writ of error, the errors of law
alone could be examined in the supreme court, and that the usual effect of an
appeal from an inferior tribunal, being one that opened the facts as well as
the law for reexamination, could not be admitted as a right to the defendant in
the district court in a criminal prosecution, because no such right was ever
known to the common law of England.

Id. at 410.  The supreme
court dismissed that contention, noting that the Texas Constitution and
Legislature had granted many rights to criminal defendants that were denied
them under the common law.  Id.  The court concluded that it had
jurisdiction to Aconsider
this decision of the district judge, with an eye both to the law and the facts
as shown by the record.@ 
Id. at 411.





[30]
44 Tex. 95 (1875).





[31]
1 Tex. Ct. App. 488 (1877).





[32]
Tollett, 44 Tex. at 97-98.





[33]
Loza, 1 Tex. Ct. App. at 491-92.





[34]
Tollett, 44 Tex. at 98; Loza, 1 Tex. Ct. App. at 490 (quoting Tollett).





[35]
See Clewis, 922 S.W.2d at 131 n.6 (citing Tollett and Loza);
Bigby, 892 S.W.2d at 874 (same).





[36]
14 Tex. Ct. App. 609 (1883).





[37]
Id. at 630.  Under Walker, only the jury can assess credibility,
resolve conflicts in the testimony, or decide the weight that should be given
to the testimony.  Id.; see also Lane v. State, 19 Tex.
Ct. App. 54, 70 (1885) (quoting Walker and stating, AThis court does not
determine the credibility of the witnesses who testify in the trial court, or
the weight to be given to the testimony.  It is the exclusive province of the
jury to decide these matters@).





[38]
For a discussion of the modern Azone@ theory, applicable in
Texas civil cases, see William Powers, Jr. & Jack Ratliff, Another Look
at ANo Evidence@ and AInsufficient Evidence,
69 Tex. L. Rev. 515, 517-20
(1991).  The authors categorize zone 1 as Ano
evidence,@ zone 2 as Ainsufficient evidence,@ zone 3 as Aenough evidence to support
a jury verdict, but not so much that a court would be justified in interfering
with a contrary finding,@
zone 4 as against the Agreat
weight and preponderance of the evidence,@
and zone 5 as Aconclusive
evidence.@  Thus, zone
1 in Walker would correspond to the modern zone 3, zone 2 in Walker
corresponds to modern zone 1, zone 3 in Walker corresponds to modern
zone 2, and zone 4 is the same in both Walker and the modern system.  

Given recent
decisions by the Supreme Court of Texas, however, this entire Azone@ theory of evidentiary sufficiency has been
thrown into some doubt.  See generally, William V. Dorsaneo, III,
Judge & Jury Symposium: Evolving Standards of Evidentiary Review: Revising
the Scope of Review, 47 S. Tex. L.
Rev. 225, 226-27 (Winter 2005) (noting that Athe Texas Supreme Court has embraced an
important recapitulation of the scope of evidentiary review in cases governed
by the preponderance of evidence standard of review.  A similar approach has
been applied by the court to cases controlled by the clear and convincing
evidence standard of review@)
(footnote omitted).





[39]
The phrase Aclearly
appears to be wrong@
might well translate to Airrational,@ Aunreasonable,@
or Anot sensible@ under the Jackson
formulation.  





[40]
At the time Walker was decided, the United States Supreme Court had not
yet held that the prosecution must prove all elements of a crime Abeyond a reasonable doubt@ in all state and federal
criminal trials.  See In re Winship, 397 U.S. 358, 364 (1970) (ALest there remain any doubt
about the constitutional stature of the reasonable-doubt standard, we
explicitly hold that the Due Process Clause protects the accused against
conviction except upon proof beyond a reasonable doubt of every fact necessary
to constitute the crime with which he is charged@).
Thus, zone four has no applicability to the elements that the prosecution must
prove beyond a reasonable doubt, but it is applicable to the elements that the
defendant must prove in establishing an affirmative defense by a preponderance
of the evidence.





[41]
Walker, 14 Tex. Ct. App. at 637.  Today, of course, the failure to prove
that the missing W.B. Mathis was dead would make the evidence legally
insufficient to support a murder conviction under Jackson.                   





[42]
Id. at 636 (noting, inter alia, that the State could have offered
evidence of the height, size, and weight of W.B. Mathis and of the height,
size, and probable weight to the person whose skeleton had been found).





[43]
Clewis, 922 S.W.2d at 138-39 (Clinton, J., concurring); but see id.
at 155 (McCormick, P.J., dissenting) (arguing that Walker was Awrong@).





[44]
Some language in Walker could be read to support the proposition that
the appellate court felt that it had the authority to reverse a jury verdict
even though the evidence was Asufficient.@  In Walker, the
court stated that Awhere
it was manifest that the verdict was wrong, and it was clear that injustice had
been done the defendant, [the verdict] has been set aside, though there was
evidence sufficient to support it.@ 
14 Tex. Ct. App. at 629.   But the conceptual problem is that the Walker
court did not have the current Jackson standard which requires proof
beyond a reasonable doubt, such that the jury=s
verdict will be upheld only if it is Areasonable,@ and Arational.@  There is nothing in Walker
that suggests that the Texas Court of Appeals would have found a verdict Amanifestly wrong@ or that an Ainjustice@ had been done to the
defendant while at the same time finding it legally sufficient under this Jackson
standard.  This same Alanguage
gap@ problem occurs in
many other early cases in which Aagainst
the great weight of the evidence@
appears to be a proxy for a verdict which, although supported by some evidence,
is nonetheless Airrational@ or Aunreasonable@
even when viewed in the light most favorable to the factfinder=s verdict.  See, e.g.,
Wilkerson v. State, 21 Tex. Ct. App. 501, 504-05, 2 S.W. 857, 857-58 (1886)
(evidence at trial showed that defendant was an innocent bona fide
purchaser of cow, and when cattle seller admitted in post-verdict affidavit
that the blame for selling the true owner=s
cattle was entirely his, Athe
verdict and judgment in this case are against the weight of the evidence@); McLaren v. State,
21 Tex. Ct. App. 513, 516, 2 S.W. 858, 858 (1886) (when all of the evidence
showed that the defendant innocently found the stolen property on the road,
never claimed to own it, and returned what he could to its true owner, court
found that A[t]his
conviction is not only not supported by, but is against the evidence and the
law@); Foresythe v.
State, 20 S.W. 371 (Tex. Crim. App. 1892) (when no evidence showed that the
defendant stole the horse, he had a bill of sale for it, he had an alibi, and
the only inculpatory evidence was that one witness saw defendant in the pasture
where the horse had been, Athe
testimony [did not] establish the guilt of defendant to a reasonable certainty@); Murphy v. State,
65 Tex. Crim. 55, 62, 143 S.W. 616, 620 (1912) (reversing conviction for
seduction for insufficient evidence; ATaking
the record as a whole, and that prior to date that prosecutrix says an
engagement to marry took place, and the first act of intercourse, defendant is
not shown to have ever paid her attentions, or conducted himself in a way as to
win the love and affection of a woman, we deem the evidence insufficient to
support a case of seduction@);
Rochetszky v. State, 94 Tex. Crim. 423, 426, 251 S.W. 232, 233 (1923)
(when A[t]he only
witness upon whom the State relied reveals such doubt and uncertainty that, in
our judgment, his testimony does not support the finding by the jury, beyond a
reasonable doubt, that the appellant was the offender@ evidence was insufficient to support
conviction); Villareal v. State, 140 Tex. Crim. 675, 680, 146 S.W.2d
406, 409 (1940) (in capital murder prosecution, reversing conviction because
physician=s testimony
contradicted that of other witnesses; A[o]rdinarily
the jury may so decide, but we doubt that the conclusion of the physician as to
the position of the parties is sufficient to prove the existence of the facts
beyond a reasonable doubt in this particular case, and in view of all of the
facts and circumstances which are without dispute@). 
I do not think that this Court would be proud to say that the evidence in these
cases was legally sufficient under the Jackson standard.

In one most peculiar case, Green
v. State, 97 Tex. Crim. 52, 260 S.W. 195 (1924), this Court began its
opinion with the statement that A[t]he
parties are all negroes,@
and then stated that the rape victim=s
uncorroborated testimony that her stepfather raped her was simply unbelievable
because she did not report the rape until she discovered that she was pregnant,
even though she explained that she did not do so because she was afraid of the
defendant.  This Court quoted Horatio in Hamlet, Acommenting on an incident he did not
understand, >But
this is wondrous strange,=
and Hamlet's reply:  >There
are more things in heaven and earth, Horatio, than are dreamt of in your
philosophy.=@  97 Tex. Crim. at 53. 
This Court forthrightly concluded that it simply did not believe the woman=s testimony that she had
been raped, even though the jury had.  This case is a perfect example of why
appellate courts should not sit as a thirteenth juror reviewing the credibility
of the witnesses (regardless of their race) and rejecting their testimony
out-of-hand.  This case, clearly one based solely on rejecting the credibility
of the victim, stands as Aa
derelict upon the waters@
of Texas law.   I would consign it to the trash barrel where it belongs.

In sum, any
review of historical precedent must focus upon the particular facts and the
state of the evidence in the specific case before the reviewing court, not upon
selective verbiage that the court may have used to describe the sufficiency of
the evidence before a single, coherent standard was announced in Jackson.  





[45]
Alicia L. Locheed, The Development of the Court of Criminal Appeals, 55 Tex. B.J. 1052, 1054-55 (November,
1992).





[46]
See id. at 1053. 





[47]
See 1 George D. Braden, The Constitution
of the State of Texas: An Annotated and Comparative Analysis 53-57
(discussing the historical importance of trial by jury in Texas and noting that
A[t]he oddest thing
about >shall remain
inviolate= is that
Texas requires a jury trial under circumstances that are not considered worthy
of a jury trial in most states@). 
Texas is still one of the most jury-deferential states in the United States. 
We allow jury trials under situations virtually no other state permits; our
constitution holds that trial by jury is an Ainviolate
right@ which cannot be
abridged; we permit jury sentencing in all criminal cases; we forbid a trial
judge from commenting on the weight of the evidence, to name but a few of our
state=s unusually
jury-deferential laws and policies. 





[48]
Tex. Const. art. V, ' 6; see 1 Braden at 399 (noting that the A[c]reation of the courts of
civil appeals was one of a series of attempts to reduce the caseload of the
supreme court@).





[49]
1 Braden at 399.





[50]
Tex. Const. art. V, ' 6; see also Tex. Gov=t
Code ' 22.225(a) (A[a]
judgment of a court of appeals is conclusive on the facts of the case in all
civil cases@)
(emphasis added).





[51]
Choate v. San Antonio & A.P. Ry. Co., 91 Tex. 406, 410, 44 S.W. 69,
69 (1898); see also Cropper v. Caterpillar Tractor Co., 754 S.W.2d 646,
648 (Tex. 1988); Pool v. Ford Motor Co, 715 S.W.2d 629, 633 (Tex. 1986);
In re King=s
Estate, 150 Tex. 662, 665, 244 S.W.2d 660, 661 (1951).





[52]
1 Braden at 399 (AThe supreme court=s primary function was to
be the resolution of conflicts@).





[53]
See Choate, 91 Tex. at 410, 44 S.W. at 69-70 (stating that the 1891
constitutional amendment conferred upon the courts of civil appeals the same
power over fact questions that the supreme court exercised prior to that
amendment).





[54]
See 1 Braden at 400-01
(stating that Acourts
of civil appeals have no general fact-finding power@).





[55]
Tex. Const. art. V, ' 5 (AThe Court of Criminal Appeals shall have final
appellate jurisdiction . . . in all criminal cases of whatever grade, with such
exceptions and under such regulations as may be provided in this Constitution
or as prescribed by law@).





[56]
Mitchell v. State, 33 Tex. Crim. 575, 577, 28 S.W. 475 (1894) (because
evidence Autterly
failed@ to show
defendant=s specific
intent to ravish homeowner, conviction reversed).  The Mitchell standard
reads much like the constitutionally mandated Jackson standard of
review.





[57]
Smith v. State, 85 Tex. Crim. 355, 357, 212 S.W. 660, 661 (1919)
(evidence was sufficient to support burglary conviction).





[58]
Jolly v. State, 87 Tex. Crim. 288, 293, 221 S.W. 279, 282 (1920).





[59]
Franklin v. State, 147 Tex. Crim. 636, 638, 183 S.W.2d 573, 574 (1944)
(citations omitted).





[60]
Everitt v. State, 156 Tex. Crim. 332, 335, 242 S.W.2d 398, 399 (Tex.
Crim. App. 1951) (op. on reh=g).





[61]
Hall v. State, 158 Tex. Crim. 243, 246, 254 S.W.2d 523, 526 (Tex. Crim.
App. 1953) (op. on reh=g).





[62]
Parker v. State, 432 S.W.2d 526, 531 (Tex. Crim. App. 1968) (quoting Mason v. State, 108 Tex. Crim. 452, 455,1 S.W. 2d 283, 284 (1928) (op. on reh=g).  In Parker, we stated,

While this court has the right to
reverse a judgment of conviction on account of the insufficiency of the evidence
(Texas Code Crim. Procedure, art. 939) and it becomes its duty to do so Aif the guilt of the accused
is not made to appear with reasonable certainty@
. . . no fixed rule has been devised which will in all cases furnish a certain
standard.  Necessarily each case must in a measure be tested by its own facts .
. . . However, when a jury, advised of the restrictions which the law places
upon them in condemning one on circumstantial evidence, reaches the conclusion
upon evidence properly before them that the accused is guilty, it is not for
the reviewing court to supplant their findings by its own, unless it is able to
point to weaknesses, omissions, or inconsistencies in the evidence which
destroy its cogency.

Id. (internal citations
omitted).





[63]
Banks v. State, 510 S.W.2d 592, 595 (Tex. Crim. App. 1974).





[64]
Jackson v. Virginia, 443 U.S. 307, 312-13 (1979).





[65]
362 U.S. 199, 199 (1960) (stating that the Aultimate
question presented to us is whether the charges against petitioner were so
totally devoid of evidentiary support as to render his conviction
unconstitutional under the Due Process Clause of the Fourteenth Amendment. 
Decision of this question turns not on the sufficiency of the evidence, but on
whether this conviction rests upon any evidence at all@).





[66]
Id. at 206 (footnotes omitted).





[67]
Jackson, 443 U.S. at 314.





[68]
Id.  The Supreme Court explained that a Ano
evidence@ standard
does not Aprotect
against misapplications of the constitutional standard of reasonable doubt@ because a Ano evidence@ standard is satisfied by a
Amere modicum@ of evidence.  ABut it could not seriously
be argued that such a >modicum= of evidence could by
itself rationally support a conviction beyond a reasonable doubt.@  Id. at 320.





[69]
Id. at 318 n.9.





[70]
Id. at 318-19 (citation omitted).





[71]
Id. at 319.





[72]
Id. (emphasis in original).





[73]
Applying that standard in Jackson, the Supreme Court upheld the
conviction, stating that Afaced
with a record of historical facts that supports conflicting inferences [we]
must presumeBeven if
it does not affirmatively appear in the recordBthat
the trier of fact resolved any such conflicts in favor of the prosecution, and
[we] must defer to that resolution.@ 
Id. at 326.





[74]
See Butler v. State, 769 S.W.2d 234, 239 (Tex. Crim. App. 1989)
(rejecting language that evidence is sufficient Aif
there is any evidence which, if believed, shows the guilt of the accused@ as inconsistent with Jackson
and constitutionally impermissable).





[75]
Griffin v. State, 614 S.W.2d 155, 158-59 & n.5 (Tex. Crim. App.
1981).





[76]
See, e.g., Johnson v. State, 803 S.W.2d 272, 279 (Tex. Crim. App. 1990)
(AThe standard of
review for sufficiency of the evidence in a criminal case is >whether, after reviewing
the evidence in the light most favorable to the prosecution, any rational trier
of fact could have found the essential elements of the crime beyond a
reasonable doubt=@); Dunn v. State,
721 S.W.2d 325, 327 (Tex. Crim. App. 1986) (AThe
Federal Constitutional test, which this Court has adopted, is whether, after
viewing all of the evidence in the light most favorable to the verdict, any
rational trier of fact could have found the essential elements of the offense
beyond a reasonable doubt@);
Ibanez v. State, 749 S.W.2d 804, 806 (Tex. Crim. App. 1986) (AWhen reviewing sufficiency
of the evidence this Court is bound to review the evidence in the light most
favorable to the jury=s
verdict.  We must determine whether, after viewing the evidence in the light
most favorable to the prosecution, any rational trier of fact could have found
the essential elements of the crime beyond a reasonable doubt@); Burks v. State,
693 S.W.2d 932, 937 (Tex. Crim. App. 1985) (Ain
reviewing the sufficiency of the evidence in either a direct or circumstantial
evidence case, the reviewing court must view the evidence in the light most
favorable to a jury=s
verdict and consider whether any rational trier of fact could have found the
essential elements of the crime beyond a reasonable doubt@); Taylor v. State,
684 S.W.2d 682, 684 (Tex. Crim. App. 1984) (AThe
due process standard for appellate review enunciated in Jackson v. Virginia
. . . is applicable in Texas to both direct and circumstantial evidence cases@) (citations omitted).





[77]
Burks v. United States, 437 U.S. 1, 17-18 (1978) (Awe hold today that the
Double Jeopardy Clause precludes a second trial once the reviewing court has
found the evidence legally insufficient[;] the only Ajust@
remedy available for that court is the direction of a judgment of acquittal@); Greene v. Massey,
437 U.S. 19, 24 (1978) (double jeopardy principles announced in Burks
apply equally to state convictions based on legally insufficient evidence).





[78]
457 U.S. 31 (1982).





[79]
Id. at 47.





[80]
Id. at 42.





[81]
Id. at 42-43.





[82]
Tibbs v. State, 397 So.2d 1120, 1125-26 (Fla. 1981).





[83]
Id. at 1123.





[84]
Id. 





[85]
Id. at 1125.





[86]
Id. 





[87]
Id.





[88]
Id.





[89]
Id.





[90] 
719 S.W.2d 320 (Tex. Crim. App. 1986).  





[91]
Schuessler v. State, 647 S.W.2d 742, 748-49 (Tex. App.BEl Paso 1983) (applying the
civil standard of Aagainst
the great weight and preponderance of the evidence@ because the defendant bore the burden of
proving, by a preponderance of the evidence, his affirmative defense).





[92]Schuessler,
719 S.W.2d at 328 (quoting Van Guilder v. State, 709 S.W.2d 178, 181
(Tex. Crim. App. 1985)).





[93]
Id. (stating that Awe
must determine whether the evidence, when viewed most favorably to the jury=s verdict, is sufficient to
support the jury=s
implicit rejection of appellant=s
affirmative defense of insanity@).





[94]
Id. at 332 (Clinton, J., dissenting).





[95]
Id. 





[96]
785 S.W.2d 146 (Tex. Crim. App. 1990).





[97]
Meraz, 785 S.W.2d at 155.  As this Court explained, the issue in such a
case is not the sufficiency of the evidence to support a conviction, but the
adequacy of proof for an affirmative defense in which the defendant statutorily
has both the burden of production and the burden of persuasion.  Id. at
151.  





[98]
Id. at 153.





[99]
Id. at 153-55.





[100]
Id. at 153-54.  This Court held,

We now join our brethren on the Texas
Supreme Court and conclude that the Afactual conclusivity clause,@ within Art. V, ' 6,
operates to limit our jurisdiction and confers conclusive jurisdiction on the
courts of appeals to resolve questions of weight and preponderance of the
evidence adequate to prove a matter that the defendant must prove.  Moreover,
when the courts of appeals are called upon to exercise their fact jurisdiction,
that is, examine whether the appellant proved his affirmative defense or other
fact issue where the law has designated that the defendant has the burden of
proof by a preponderance of evidence, the correct standard of review is whether
after considering all the evidence relevant to the issue at hand, the judgment
is so against the great weight and preponderance of the evidence so as to be
manifestly unjust.

Id. at 154-55.  Of
course, as the Texas Supreme Court refines its sufficiency-of-the-evidence
standards of review, see, e.g., City of Keller v. Wilson, 168 S.W.3d 802
(Tex. 2005), this Court may choose to follow suit as a matter of comity and
consistency.





[101]
892 S.W.2d 864 (Tex. Crim. App. 1994).





[102]
Id. at 875 (AAt
trial appellant had both the burden of production of evidence and the burden of
persuasion for his affirmative defense of insanity@).





[103]
In those few instances in which the State has a burden of proof measured by the
civil standard of Apreponderance
of the evidence@ (e.g.,
in a motion to revoke probation), the same civil-standard sufficiency review
would apply.





[104]
See In re King=s
Estate, 150 Tex. 662, 664-65, 244 S.W.2d 660, 661 (Tex. 1951).





[105] 
See, e.g., City of Keller v. Wilson, 168 S.W.3d 802 (Tex. 2005).





[106]
Tex. Code Crim. Proc. art. 44.25
(AThe courts of
appeals or the Court of Criminal Appeals may reverse the judgment in a criminal
action, as well upon the law as upon the facts@). 
It would appear that, under article 44.25 (and all of its predecessor
statutes), both the courts of appeals and the Court of Criminal Appeals have
co-equal jurisdiction to reverse Aon
the facts@ as well as
the law.





[107]
823 S.W.2d 375 (Tex. App.BAustin
1992, pet. ref=d).





[108]
Id. at 377.





[109]
Id. at 379-80.





[110]
This Court had explicitly rejected such Afactual
sufficiency@ claims.  See
Minor v. State, 657 S.W.2d 811, 812 n.5 (Tex. Crim. App. 1983) (per
curiam); Combs v. State, 643 S.W.2d 709, 716 n.1 (Tex. Crim. App.
1982); White v. State, 591 S.W.2d 851, 855 (Tex. Crim. App. 1979).





[111]
See White v. State, 890 S.W.2d 131, 134 (Tex. App.BTexarkana 1994, pet. ref=d) (AOur exclusive fact jurisdiction under the
constitution also both permits and requires us to review for the factual
sufficiency when the sufficiency of the evidence is challenged on appeal@).





[112]
See Wilson v. State, 879 S.W.2d 309, 311 (Tex. App.BAmarillo 1994, no pet.) (Awe do not, as appellant
requests us to, sit as a thirteenth juror reweighing the evidence to decide
whether we believe the evidence established that he caused the penetration, nor
act as a superjury reweighing the evidence; rather, we act only as a due
process safeguard insuring rationality of the fact finder.  In doing so, we
test the evidence to ascertain if it is at least conclusive enough for a
reasonable fact finder to believe the questioned element is established beyond
a reasonable doubt@)
(citations omitted); House v. State, 880 S.W.2d 512, 514 (Tex. App.B Eastland 1994, no pet.)
(collecting cases and stating that A[a]ll
of these courts agree that >factual
sufficiency=
challenges in criminal cases are limited to affirmative defenses and other
issues where the defendant has the burden of proof; consequently, a challenge
to the sufficiency of the evidence to support the elements of the conviction is
reviewed under the [Jackson standard]@);
Clewis v. State, 876 S.W.2d 428, 439
(Tex. App.BDallas
1994), vacated by 922 S.W.2d 126 (Tex. Crim. App. 1996); Pender v.
State, 850 S.W.2d 201, 203 (Tex. App.BFort
Worth 1993, no pet.) (AWe
disagree with the Austin court [in Stone], and decline to follow the
rationale expressed in its opinion.  The Court of Criminal Appeals in Meraz
was only addressing appellate review of affirmative defenses; the opinion did
not change the standard of review concerning the sufficiency of the evidence to
prove the elements of the State=s
case@); Smith v.
State, 874 S.W.2d 269, 272 (Tex. App.B
Houston [14th Dist.] 1994, pet. ref=d)(noting
its disagreement with Stone and holding Athat the standard set out in Meraz applies
only to cases in which the defendant has the burden of proof and that
the only standard to be applied when reviewing the sufficiency of the evidence
is the standard set out in Jackson@); 
Lopez v. State, 824 S.W.2d 298, 303-04 (Tex. App.BHouston [1st Dist.] 1992, no pet.) (declining
to make a factual sufficiency review); Crouch v. State, 858 S.W.2d 599,
601 (Tex. App.BFort
Worth 1993, pet. ref=d). 
The position of these courts of appeals is summarized in Crouch as
follows:

With respect to Crouch=s claim that the jury=s finding was against the
great weight and preponderance of the evidence, we hold that there is no such
thing as a factual sufficiency of the evidence review in criminal cases.  If
there is sufficient evidence from which a rational trier of fact could
determine beyond a reasonable doubt that the defendant used a firearm in the
commission of or flight from the commission of an offense, then the jury=s finding to that effect
would never be beyond the great weight and preponderance of the evidence. 
While there may be some justification for such a review in a civil case where
the only requirement is that there be merely more than a scintilla of evidence
to support the jury=s
finding, the jury is most often required to find a fact by a preponderance of
the evidence; however, there is no similar justification for such a review in a
criminal case where the legal sufficiency test more closely approximates the
burden that the State must meet.

Id. at 601.





[113]
Stone, 823 S.W.2d at 377-78.





[114]
See Cropper v. Caterpillar Tractor Co., 754 S.W.2d 646, 649 (Tex. 1988)
(ABy creating the
courts of appeals and vesting them with >appellate
jurisdiction,= the
1891 amendment to the constitution conferred upon those courts the same power
over fact questions that this court exercised prior to that amendment@).





[115]
White v. State, 591 S.W.2d 851, 855-56 (Tex. Crim. App. 1979).





[116]
Id. at 856.





[117]
Tex. Gov=t Code '
22.225(a) (emphasis added).  Although this statute has been amended numerous
times since the courts of civil appeals were renamed the courts of appeals in
1981 and given appellate jurisdiction over criminal matters, the legislature
has not seen fit to grant Afactual
conclusivity@
statutory authority to the courts of appeals in criminal cases.





[118] 
I agree with the reasoning in Arvay v. State, 646 S.W.2d 320 (Tex. App. B Dallas 1983, pet. ref=d), on the legislative
purpose of this statute which was formerly article 1820:    we hold that
criminal cases are not within the provision of article 5, section 6, that the
decisions of the Courts of Appeals Ashall
be conclusive on all questions of fact brought before them on appeal or writ of
error.@ This holding
is also supported by a legislative interpretation of section 6 in the
implementing legislation, article 1820 of the Texas Revised Civil Statutes
(Vernon Supp. 1982). As amended in 1981, this statute provides:  AThe judgments of the Courts
of Appeals in civil cases shall
be conclusive in all cases on the facts of the cases.@ (Emphasis added). Evidently the legislature
was careful to limit the fact jurisdiction of the Courts of Appeals to civil
cases.

Id. at 322.





[119]
Combs v. State, 643 S.W.2d 709, 716 (Tex. Crim. App. 1982) (citations
omitted; emphasis in original).  We further noted, Ano other standard may be utilized by the
Courts of Appeals in reviewing criminal convictions other than sufficiency of
the evidence to support the conviction.@ 
Id. n.1.





[120]
Tex. Code Crim. Proc. art. 36.13
(AUnless otherwise
provided in this Code, the jury is the exclusive judge of the facts@) and art. 38.04 (AThe jury, in all cases, is
the exclusive judge of the facts proved, and of the weight to be given to the
testimony@).  In bench
trials, of course, it is the trial judge who is the sole factfinder, and his
credibility and weight determinations are entitled to the same deference as
that given to a jury. 





[121]
Nonetheless, the Supreme Court invokes the Texas Constitution=s provision on the
inviolable right to a jury trial when reversing a court of appeals=s factual sufficiency
decision which treads upon a jury=s
credibility and weight determinations.  See, e.g., Herbert v. Herbert,
754 S.W.2d 141, 143-44 (Tex. 1988) (reversing court of appeals=s decision on factual
sufficiency and noting that A[t]he
admission by the court of appeals that reasonable minds could differ about the
conclusions to be drawn from the evidence makes it abundantly clear that a
substitution of court findings for jury findings has occurred.  This is clearly
error@); see id.
at 147 (Mauzy, J., dissenting) (noting that factual sufficiency review allows
appellate court judges Ato
usurp the jury function.  It is allowing them to substitute their own thought
processes for those of the jury.  Any distinction between appellate judges
weighing the evidence and appellate judges determining fact questions as would
a jury is a distinction that exists in semantics only and not in reality@).





[122]
922 S.W.2d 126 (Tex. Crim. App. 1996).  Judge Maloney wrote the majority
opinion; Judge Clinton joined that opinion, but also wrote a concurring
opinion, as did Judge Meyers.  Presiding Judge McCormick wrote a dissenting
opinion, joined by Judge Keller.  Judge White wrote a separate dissenting
opinion as did Judge Mansfield.  





[123]
Clewis v. State, 876 S.W.2d 428, 429-40 (Tex. App. B Dallas 1994), vacated
by 922 S.W.2d 126 (Tex. Crim. App. 1996).  In that opinion, the court of
appeals noted that, even if the courts of appeals have fact jurisdiction in
criminal cases under the Texas Constitution, the factual conclusivity clause A[d]oes not purport to set
out the standard of review required to exercise that fact jurisdiction. 
The question before us in this case, therefore, is what standard of review
we are required to apply[.]@
Id. at 431.





[124]
Clewis, 922 S.W.2d. at 129 (AWe
hold that the proper standard of review for factual sufficiency of the elements
of the offense is the one articulated by the Third Court of Appeals in Stone@).





[125]
Id. at 133 n.12 (quoting Clewis, 876 S.W.2d at 444 n.2 (McGarry, C.J.,
concurring)).





[126]
Clewis, 922 S.W.2d at 133.





[127]
The total number of Shepard=s
citations to Clewis listed on Lexis as of September 25, 2006, was 5,786,
including eleven law review articles and nine treatise sections.   One law
review article begins with the statement ACitizens
convicted of crimes in Texas may have a chance at a new trial thanks to Clewis
v. State.@ Mark
Bankston, Forty Nuns Can=t
Be Wrong: Reviewing Factual Sufficiency of Evidence Without the Light Most
Favorable to the Prosecution, Clewis v. State, 922 S.W.2d 126 (Tex.
Crim. App. 1996), 38 S. Tex. L. Rev. 263, 263 (March 1997).  But as
Professor Dix notes, reversals under Clewis are supposed to be (and are)
exceedingly rare.  43 George E. Dix
& Robert O. Dawson, Texas Practice: Criminal Practice and Procedure ' 31.133 at 65 (2d ed. 2001
& Supp. 2005) (collecting and discussing twelve cases reversed by the
courts of appeals for factual insufficiency and stating that A[w]hatever the criterion
[for factual sufficiency review under Clewis], the Court of Criminal
Appeals clearly regards factual sufficiency review as seldom leading to a
conclusion that a conviction is unsupported.@).  






[128]
944 S.W.2d 642 (Tex. Crim. App. 1996)





[129]
Id. at 647.  The Jackson legal sufficiency test requires the
reviewing court to examine all of the evidence as well, but to make that
examination in the light most favorable to the State because the State was the
prevailing party at trial.  See Jackson, 443 U.S. at 319.





[130]
Id. at 647 (citations omitted)





[131]
Id. at 648 (emphasis in original; citations omitted).





[132]
Id. at 649.





[133]
958 S.W.2d 404 (Tex. Crim. App. 1997).





[134]
Id. at 407.





[135]
Id. at 408.





[136]
Id. at 408-09.  





[137]
See Dix, supra, ' 31.135 at 68-69 (noting that,
in the forty nuns hypothetical, under a Clewis analysis, Aan appellate court may be
permitted to take into account that the State=s
witness=s credibility
has been impeached by his status and evidence of a motive to falsify, while
each nun=s credibility
has been bolstered by her status and by the direct corroboration of nineteen
others of similar character and by indirect corroboration by the testimony of
twenty other similar witnesses.  On the other hand, the need to avoid
substantial intrusion upon [the] jury=s
role certainly means that the appellate court is not to speculate regarding the
demeanor of the witnesses on the stand or other matters that the jurors may
have considered in evaluating the credibility of each witness@).





[138]
23 S.W.3d 1 (Tex. Crim. App. 2000).





[139]
Id. at 5.





[140]
Id. at 8 (citation omitted).





[141]
Dix, supra, ' 31.135 at 71.  Indeed, the
same problem has been noted by commentators concerning the current civil-law
legal/factual sufficiency standard of review in City of Keller.  See
W. Wendell Hall & Lynne Liberato, Standards of Review of
Sufficiency of the Evidence in Texas After City of Keller v. Wilson, 17
(State Bar of Texas, 2006 Annual Judicial Section Conference) (AGiven the standard of
review articulated in legal sufficiency cases, it is questionable whether there
is a distinction between legal and factual sufficiency standards of review as
it appear that Texas follows the federal Boeing v. Shipman [411 F.2d 365
(5th Cir. 1969) (en banc)] standard for reviewing sufficiency
of the evidence challenges@).





[142]
66 S.W.3d 283 (Tex. Crim. App. 2001). 





[143]
Id. at 285.





[144]
Id. (citing Calvert, "No Evidence" and "Insufficient
Evidence" Points of Error, 38 Tex.L.Rev.
361 (1960)).





[145]
Id. 





[146]
Id.





[147]
Id. at 286 n.5.





[148] 
Clewis, 922 S.W.2d at 134; see also Johnson, 23 S.W.3d at 7.  





[149]
101 S.W.3d 89 (Tex. Crim. App. 2003).





[150]
Id. at 97 (citations omitted).





[151]
144 S.W.3d 477 (Tex. Crim. App. 2004).





[152]
Id. at 483.  As we noted in Zuniga, the different civil and
criminal law standards of proof are an important source of confusion.  The
Court criticized the previous year=s
discussion in Zuliani v. State, 97 S.W.3d 589, 593-94 (Tex. Crim. App.
2003), in which we had stated that Athe
reviewing court reviews all of the evidence in a neutral light and asks whether
the State=s evidence
taken alone is too weak to support the finding and whether the proof of guilt,
although adequate if taken alone, is against the great weight and preponderance
of the evidence.@  Id. 
In Zuniga we noted that

Once again, the
preponderance-of-the-evidence language creeps into a factual-sufficiency review
where the burden of proof at trial was beyond a reasonable doubt.  And, the
Court=s statement that
the reviewing court must use both standards is confusing. 

144 S.W.3d at 484.  True enough, but the entire civil-law
factual-sufficiency review incorporating five zones is built upon an implicit
assumption that the burden of persuasion is Aby
a preponderance of the evidence.@ 
This is precisely what the Texas Supreme Court recognized in its recent
decision in In re C.H., 89
S.W.3d 17 (Tex. 2002) when it stated 

We conclude that the burden of proof at
trial necessarily affects appellate review of the evidence. Under traditional
factual sufficiency standards, a court determines if a finding is so against
the great weight and preponderance of the evidence that it is manifestly
unjust, shocks the conscience, or clearly demonstrates bias. But that standard
is inadequate when evidence is more than a preponderance (more likely than not)
but is not clear and convincing. As a matter of logic, a finding that must be
based on clear and convincing evidence cannot be viewed on appeal the same as
one that may be sustained on a mere preponderance.

Id. at 25 (citations and footnote omitted).  That is,
the entire five zone factual sufficiency construct, developed for cases in
which the burden of proof is Aby
a preponderance of the evidence@ 
must be modified when either party bears a greater burden of persuasion, such
as Aclear and
convincing@ or Abeyond a reasonable doubt.@  Jackson
incorporated the State=s
burden of proof; Meraz incorporated the defendant=s burden of proof; Clewis did not.

In In re J.F.C., 96 S.W.3d
256 (Tex. 2002), the Texas Supreme Court realized that there was a problem in
distinguishing between the civil standards for legal and factual sufficiency
review when the burden of proof is heightened.  That court turned to the
Supreme Court=s
decision in Jackson and used it for its legal sufficiency review:

The
reasoning in Jackson reinforces our conclusion that to apply our
traditional no evidence standard of review in a parental termination case would
not afford the protections inherent in the clear and convincing standard of
proof. As the example in Jackson highlights, a parent's rights
could be terminated based on "but one slender bit of evidence" as
long as the jury was properly instructed on the clear and convincing evidence
burden of proof. Our legal sufficiency review, therefore, must  take into
consideration whether the evidence is such that a factfinder could reasonably
form a firm belief or conviction about the truth of the matter on which the
State bears the burden of proof.

Id. at 265-66.  But the supreme court also explained
its factual sufficiency standard:

In a factual sufficiency review, as we explained in In
re C.H., a court of appeals must give due consideration to evidence that
the factfinder could reasonably have found to be clear and convincing.  We also
explained in that opinion that the inquiry must be "whether the evidence
is such that a factfinder could reasonably form a firm belief or conviction
about the truth of the State's allegations.  A court of appeals should consider
whether disputed evidence is such that a reasonable factfinder could not have
resolved that disputed evidence in favor of its finding. If, in light of the
entire record, the disputed evidence that a reasonable factfinder could not
have credited in favor of the finding is so significant that a factfinder could
not reasonably have formed a firm belief or conviction, then the evidence is
factually insufficient. A court of appeals should  detail in its opinion why it
has concluded that a reasonable factfinder could not have credited disputed
evidence in favor of the finding.

Id. at 266-67 (footnotes
omitted).  In this case, as in our Clewis cases, there is barely visible
light between the legal and factual sufficiency standards of review.  One
wonders if this two-tier review will long endure in civil cases where the
burden of proof is heightened. See, e.g., In the Interest of A.M.W., No.
10-05-00123-CV, 2006 Tex. App. LEXIS 4528 *48 (Tex. App. B Waco, February 22, 2006) (ADo we need a factual
sufficiency review in addition to a legal sufficiency review@ in parental termination
cases when the standard of proof is heightened) (Gray, C.J., dissenting).





[153]
Zuniga, 144 S.W.3d at 484-85 (footnote omited).





[154]
Jackson, 443 U.S. at 319.





[155]
Zuniga, 144 S.W.3d at 484.





[156]
Tex. Code Crim. Proc. arts. 36.13
& 38.06.





[157]
164 S.W.3d 607 (Tex. 2004).





[158]
See id at 621-22, noting that the factual conclusivity clause applies to
factual insufficiency questions, but

 

While the "factual conclusivity
clause" requires that a distinction be made between questions of fact and
questions of law, it does not prescribe where the line is to be drawn, leaving
that matter for this Court. Over the years, we have concluded that no evidence
means not only a complete absence of evidence but also evidence which cannot be
given legal effect, either because the law does not permit it or because the
evidence is too weak . . . .

The rule works in tandem with the
preponderance of the evidence standard of proof; any evidence that does not
merely create surmise or suspicion can be used to show that something is more
likely than not. But when proof of an allegation must be clear and convincing,
even evidence that does more than raise surmise and suspicion will not suffice
unless it is capable of producing a firm belief or conviction that the
allegation is true. Evidence of lesser quality is, in legal effect, no
evidence. Whether evidence is of such quality is thus a question of law in a
case with that elevated standard of proof, just as whether evidence is more
than a scintilla is a question of law in a case proved by a preponderance of
the evidence.

Id. at 621 (footnote omitted).  The supreme court
went on to explain that

the "factual conclusivity
clause" does not define  the Aquestions
of fact@ on which the
courts of appeals' decisions are conclusive. We held, shortly after the clause
was adopted, that Awhether
there be any evidence or not to support an issue is a question of law, and not
of fact.@  Evidence
that does not produce a firm belief or conviction does not support an issue
that must be proved by clear and convincing evidence. Whether evidence supports
an issue is no less a question of law simply because the standard of proof is
heightened.

Id. at 626-27 (footnote
omitted).





[159]
See Dix, supra, at ' 31.131 at 22 (Supp. 2005)
(AAlthough the courts
of appeals conduct factual sufficiency review in many cases, they seldom find
the evidence factually insufficient@).





[160]
Dix, supra at ' 31.133 at 65-66 n.7 (2d
ed. 2001) & 23-24 n.7 (2005 Supp.).





[161]
NY CLS CPL '
470.15(5); see People v. Bleakley, 69 N.Y.2d 490, 492 N.E.2d 672, 673
(Ct. App. 1987) (court of appeals erred in failing to conduct statutorily
required factual-sufficiency review when defendant claimed evidence was
insufficient); 10 U.S.C.S. '
866 (c) (Athe
[Military] Court of Criminal Appeals may act only with respect to the findings
and sentence as approved by the convening authority. . .as it finds correct in
law and facts . . . . In considering the record, it may weigh the evidence,
judge the credibility of witnesses, and determine controverted questions of
fact, recognizing that the trial court saw and heard the witnesses@).





[162]
Tibbs, 397 So.2d at 1125-26.





[163]
This review does not second guess the jury=s
credibility and weight assessment because the Jackson standard requires
review in the light most favorable to the jury=s
credibility and weight determinations.  See Zimmerman v. State, 860
S.W.2d 89, 92 (Tex. Crim. App. 1993) (AOur
purpose [under Jackson] is not to reevaluate the weight and credibility
of the evidence, but to ensure that the jury reached a rational decision@).





[164]
Ex parte Elizondo, 947 S.W.2d 202, 206 (Tex. Crim. App. 1996).





[165]
Id. 





[166]
Clewis, 922 S.W.2d at 163 (White, J., dissenting).





[167]Watson,
160 S.W.3d at 630.